[No. 11593.   Department One.   November 10, 1914.]

BAVARIA INVESTMENT COMPANY, *Appellant*, v. WASHINGTON
BRICK, LIME & SEWER PIPE COMPANY, *Respondent*.[1]

CONTRACTS—BUILDING CONTRACTS—CERTIFICATE OF PERFORMANCE—
ACTIONS—CONDITION PRECEDENT.  Where a building contract makes
the architect an umpire or arbiter to determine differences arising
in the performance of the contract, his certificate is a prerequisite
to recovery, and final and conclusive, in the absence of arbitrary re-
fusal to give it, fraud, misconduct, or palpable mistake.

SAME — ARCHITECTS' CERTIFICATE — CONCLUSIVENESS — FAILURE TO
APPEAL TO ARBITRATORS.  Where a building contract provides that,
as to specified matters, in case of a dissent from the architects'
award by either party, the matter shall be referred to arbitrators,
the architects' decision on such matters is conclusive and final
where neither party appeals to arbitration from such decision, and
the provision for arbitration will be treated as waived by both
parties.

SAME — BUILDING CONTRACTS — DAMAGES — ACTIONS — ISSUES AND
PROOF—ARCHITECTS' CERTIFICATES.  In an action to recover damages
for the nonperformance of a building contract, allowed by an archi-
tect as umpire under the contract, the plaintiff's right to rely on the
architects' certificate is not waived by introducing proof of the facts
upon which it was made, the same being material by reason of de-
fendant's raising an issue as to the good faith of the certificate.

SAME—CERTIFICATE OF ARCHITECT—ACTIONS—FRAUD—BURDEN OF
PROOF—EVIDENCE—SUFFICIENCY.  The burden of impeaching the cer-
tificate of an architect, made conclusive by a building contract, is
upon the party asserting the fraud; and is not sustained by a claim
of incompetency from the fact that the architect had no technical
knowledge as to the process of manufacturing terra cotta which he
was to pass upon, where it appears he had sufficient knowledge to
detect its good or bad qualities.

SAME—CERTIFICATE OF ARCHITECT—COLLUSION—EVIDENCE—SUFFI-
CIENCY.  An architect's certificate is not sufficiently impeached for
collusion, from the fact that he consulted with the owner's president
and the foreman of construction in charge of the work, where there
was no evidence that he submitted his judgment to theirs, and it ap-
pears he endeavored to make a fair estimate.

SAME — CERTIFICATE   OF   ARCHITECT — SCOPE — CONCLUSIVENESS.
Where the powers of architects with reference to certain material

[1]Reported in 144 Pac. 68.

ended with its acceptance or rejection by them, and the same was accepted under a guaranty by the owner and agreement to replace defective material, they had no power to determine the damages to the owner by reason of the use of the defective material, the contract nowhere submitting such damage to their determination; hence an award by them therefor is not binding on the parties.

DAMAGES—BREACH' OF CONTRACT—EXCESSIVENESS. An award of damages in the sum of $500, by reason of the use of defective material in a building, cannot be said to be excessive, where the evidence is conflicting, witnesses on one side fixing the damages at $40 to $50, and on the other side at $800 to $1,000.

CONTRACTS — BUILDING   CONTRACTS — ARCHITECTS' CERTIFICATE — SCOPE—CONCLUSIVENESS. In a building contract, a clause making the architects' certificate final as to damages by reason of delay in the construction of the building, has reference to matters of which they would be assumed to or would necessarily, have special or peculiar knowledge, and would not include damages from loss of rents during the delay, as to which they had no special knowledge; hence the finding as to such damages would not be binding upon the parties except only as to the period of time lost by reason of delays caused by a party to the contract.

SAME — ARCHITECTS' CERTIFICATE — VALIDITY — INCLUSION OF IM-PROPER ITEMS. An architect's certificate upon a building contract is not vitiated by the inclusion of two items of damages which the contract did not submit to their determination, except only *pro tanto*, where such items are separable, and the balance of the award will not be affected thereby.

SAME — BUILDING   CONTRACTS—PERFORMANCE—DELAY—DAMAGES— MEASURE. Damages from delay in completing a building on time includes the extra expense, labor, and material resulting from the inability to inclose the building on time in the winter time.

SAME. The measure of damages by reason of delay in completing a building on time, resulting from loss of expected rents during the period of the delay, is the reasonable rental value during that time.

SAME—DAMAGES—DELAY—EVIDENCE—SUFFICIENCY. No more than $2,000 is justified as damages from the loss of two months' rents by reason of delay in completing a building, where the defendant had no knowledge of actual leases entered into by the owner, the owner claimed that the lower floor had been rented for $750 a month, which was lost for two months, and valued the rental of the other floors at $550 a month, but admitted that such floors had only produced an income of $320 a month, which was not net and did not take into account the expense of operation.

Cross-appeals from a judgment of the superior court for Spokane county, Hinkle, J., entered January 11, 1913, upon findings made after a trial to the court without a jury, in an action to recover damages and to cancel a mechanics' lien upon a building. Reversed on plaintiff's appeal.

*Tolman & King*, for plaintiff.

*Charles P. Lund*, for defendant.

ELLIS, J.—This action was brought to recover damages certified by the architects of an apartment building erected by the plaintiff in the city of Spokane, and for the cancellation of a claim of lien on the building filed by the defendant for terra cotta furnished in its construction under a contract. On July 19, 1911, the parties entered into a contract, in which the plaintiff is designated as the owner, and the defendant as the contractor. It is, in substance, as follows:

"(1)  The contractor, under the direction, and to the satisfaction of specified architects, shall provide all materials and perform all work for the terra cotta required for the building, according to specifications and drawings prepared by the architects, and color as selected by owner and architects. The contractor guarantees the same to be of even color, of square and even bed, and to be and remain free from checks and cracks, and to replace without cost to the owner any defective terra cotta furnished.

"(2)  The architects shall furnish further details, explanations and illustrations as necessary, to which contractor shall conform, so far as consistent with the original drawings and specifications.

"(3)  No alterations shall be made except upon written order of architects and the value of work added or omitted thereby shall be computed by the architects and be added to, or deducted from, the contract price. In case of dissent from such award by either party, such valuation shall be referred to three disinterested arbitrators, one to be appointed by each of the parties and the third by the two thus chosen, the decision of any two of whom shall be final.

"(4)  The contractor shall, within 24 hours after notice from the architects, remove from the grounds or buildings

all materials condemned, and take down portions of work condemned by written notice from the architects.

"(6)   All terra cotta required for first story, up to and including second story sill course, must be delivered within seven weeks from date of contract; balance as required by general contractor, so as not to delay the work.   In case of failure in this regard causing loss to the owner, the contractor agrees to reimburse the owner for any loss or damage caused by such failure, which loss or damage shall be estimated and certified by the architects as provided in the eighth article.

"(7)   Should contractor be delayed by any delay or neglect of the owner or architects or any other contractor employed upon the work, through no fault of the contractor, the time for completion shall be extended correspondingly, but no allowance shall be made unless claim in writing therefor be presented to the architects within 24 hours of such delay. Such extension shall be certified by the architects, but an appeal may be made to arbitration as provided in third section.

"(8)   The owner shall provide the other materials in such manner as not to delay material progress of the work, and, in the event of failure so to do causing loss to the contractor, he shall reimburse the contractor for such loss, and if the contractor delay the material progress of the work causing damage to the owner, he shall make good such damage. The amount of such loss to either party shall, in every case, be determined by the architects or by arbitration, as provided in section 3.

"(9)   The contract price for the work and materials shall be $2,165, subject to additions and deductions as provided, such price to be paid as follows:   $500 when all terra cotta to top of second story windows is delivered, $500 when all terra cotta to top of third story windows is delivered, $500 when all terra cotta is delivered on the ground, and the balance when placed in position and accepted by architects, final payment to be made within ten days after contract is fulfilled.   All payments shall be made upon written certificates of the architects that they have become due.

"(10)   No certificate given or payment made, except the final certificate or final payment, shall be conclusive evidence of performance either in whole or in part, and no payment

shall be construed an acceptance of defective work or materials.

"(11)   The owner shall maintain full insurance during the progress of the work in his own name and that of the contractor against loss or damage by fire, payable to the parties as their interests appear.

Plaintiff's complaint sets up two causes of action: The first, claims, for delay in furnishing the terra cotta, damages in the sum of $6,036.11 as certified by the architects, less the contract price of the material, $2,165, making a net damage of $3,871.11, and alleges that the defendant in no manner dissented from the award of the architects. The second, sets up damages in the sum of $750 because of delivery of defective terra cotta, objected to by the architects on delivery, and thereupon guaranteed as fit by the defendant, but not conforming to the guaranty when placed in the building.

The defendant's answer consists of a general denial and two affirmative defenses. The first, sets up an agreement that defendant, instead of the architects, should prepare the necessary detailed plans, which it did, and manufactured all terra cotta for the first story ready for delivery on order of the architects within the period of seven weeks, and that delay in delivery was due to the fact that the building was not ready for the material and there were no facilities for storing it on the ground; that, after the defendant had proceeded with the manufacture of the terra cotta for the rest of the building, it was notified by the architects that they desired to furnish the details for the rest of the building; that defendant was compelled to suspend work till such details were furnished, and that the delay was caused by the fault of plaintiff and its architects. The second affirmative defense alleged that the architects' certificate of damage was made without right or authority, without the exercise of any judgment, and without knowledge of the facts, fraudulently and with the purpose and intent of cheating and defrauding the defendant, and included items not the proper subject of damages.

By way of cross-complaint, the defendant alleged full performance of the contract on its part, and sought to establish and foreclose a lien upon the building for the contract price, $2,165, and $500 attorney's fee.   The reply traversed the affirmative defenses, and for answer to the cross-complaint, admitted delivery of certain terra cotta which was used in the construction of the building, but denied the manufacture and delivery of the material as required by the contract, and denied that the contract had been performed.   For an affirmative defense to the cross-complaint, it re-pleaded, by reference, the matters set up in the first and second causes of action in the plaintiff's complaint, omitting the paragraph referring to the architects' certificate, and alleged delay in the performance of the contract to the plaintiff's damage in the sum of $6,036.11, setting forth the items of damage in detail, and alleged that the architects had refused to issue certificates for the contract price or any part of it because such damage exceeded the contract price.   No reply was interposed by the defendant to this affirmative defense to its cross-complaint.   The architects' certificate, which is in evidence, is as follows:

"Jan. 22, 1912.

"Washington Brick, Lime & Sewer Pipe Co., Spokane, Wash.

"Gentlemen:—In harmony with your request under date of January 20th, 1912, for us to audit and certify certain matters touching your contract with the Bavaria Investment Co. to furnish the terra cotta facing of the building erected on lot 28, block 4, Glovers Add. to Spokane, Wash., we beg herewith to certify said matters in the order requested, as follows, to wit:   Reasonable estimated damages caused by delay to deliver the terra cotta on the premises from the 23rd day of Oct., 1911, to Jan. 22, 1912.

| | |
|---|---:|
| 4 weeks hoisting engine rent at $15 per week | $60.00 |
| Engineer, extra time, 6 days, 3 hours at $5 per day | 31.85 |
| Night watchman, 8 weeks at $19.50 | 156.00 |
| Telephone, 2 months at $6.00 | 12.00 |
| 20 gal. coal oil for lanterns at $.18 | 3.60 |
| 8 cords wood cut, at $6.25 | 50.00 |

| | |
|---|---|
| Labor to clean out snow on Nov. 13th............ | 25.00 |
| Labor to clean out snow at different times after the 13th ................................... | 25.00 |
| 4 stoves and pipes to dry out building........... | 26.50 |
| Labor to install stoves and changing around...... | 50.00 |
| Extra expense to mechanics in starting and stopping work from time to time in laying terra cotta and brick; also by running small crew of men, being the same operating expense as a large crew...... | 1359.00 |
| 1 fireman, 8 weeks at $21.00.................. | 168.00 |
| 15 cords 4 ft. wood at $5.50.................. | 82.50 |
| Damage in filling under sidewalk, and sidewalk.... | 100.00 |
| Extra labor to hold up floor and roof framing in front of building ......................... | 100.00 |
| To time lost on carpenters and labor in bad weather and short days .......................... | 220.00 |
| False windows and doors to enclose building....... | 32.00 |
| Extra time of building superintendent, 44 days at $6.50 .................................... | 286.00 |
| 4 rolls tar paper for temporary roof, etc......... | 4.30 |
| Labor to build temporary roof, etc.............. | 12.00 |
| Estimate damages to permanent defective terra cotta ...................................... | 750.00 |
| Extra 2 months supervision of architect......... | 360.00 |
| Arnold-Evans extra charge repairing frozen pipes etc., under sidewalk........................ | 44.20 |
| Extra insurance, 2 months.................... | 28.00 |
| 2 months rent lost .......................... | 2800.00 |
| "Total ................................ | 6786.11 |
| Contract price of terra cotta.................. | 2165.00 |
| Balance due Bavaria Investment Co............. | 4621.00 |

"Yours truly, JONES & LEVESQUE."

The cause was tried to the court without a jury. The trial was a long one, resulting in a statement of facts of about six hundred and fifty pages. The court made no formal findings of fact, but filed a memorandum decision which the parties apparently accepted as findings. It recites, in substance, that there was delay and that the plaintiff was damaged thereby; that the material furnished and used was

not up to the standard fixed by the contract; that the delay was caused through the defendant's fault and that this fact, when the plaintiff was urging that the material be furnished, was admitted by the defendant's secretary and treasurer; that the architects furnished defendant small details for the work shortly after the contract was signed, and prepared full sized details for parts of the work some time in August, but these were not delivered nor called for till September 12, and some of them till October 2; that some of the material for the first story was delivered about October 6, some the latter part of that month, some in November, some in December, 1911, and a few pieces in January, 1912; that the other material was furnished from October 20 to December 2, 1911, and the last few pieces in January, 1912; that the defendant, at the time of furnishing the material, made no claim that the delays were caused by the failure to supply the full sized details in time, though the claim was made at the trial; that the plaintiff was entitled to damages for the delay in the sum of $800; that the beauty of the building is marred by the improper material furnished by reason of check marks which will prove a permanent injury; that this material was at first rejected by the architects but defendant induced its acceptance by giving a written guarantee that the check marks would not spread or enlarge; that these check marks are a material damage, and will prove a permanent and substantial injury to the building by reason whereof the plaintiff is entitled to $500 damages. Judgment was rendered for the defendant for the contract price, $2,165, less $1,300 damages, and for $100 attorney's fees. Both parties appealed. To avoid confusion, we shall designate the parties throughout as plaintiff and defendant.

Any effort to analyze the evidence in detail would be an almost endless, and entirely useless, task. A careful perusal of the entire evidence convinces us that it amply sustains the court's informal findings in everything save the amount of damages. The evidence shows that, had the material been

furnished when called for, the building could have been enclosed before winter set in and much expense and loss to the owner thereby avoided. Both by letter and by telephone, the plaintiff continually urged the furnishing of the material from about the middle of October till the latter part of December. The letters repeatedly charged the defendant with causing the delay, and threatened to hold it for damages. They evoked no reply, and we fail to find any convicing evidence that the defendant, at any time prior to suit, advanced the excuse now urged that the delay was caused by lack of the larger details. There is no pretense that any claim in writing or otherwise for an extension of time for this or any other reason was ever presented to the architects as stipulated in the seventh clause of the contract. Moreover, the evidence is far from convincing that any material delay resulted from a lack of these larger details. That some of the glazed surface of the terra cotta was materially marred by checks or cracks is fairly established. That it was accepted by the architects only on a written guaranty that the checks would not show or increase when placed in the building, is uncontroverted.

A consideration of the appeal and cross-appeal separately is unnecessary and, in fact, impracticable. They both depend upon the one dominant question as to the validity and effect of the certificate of the architects, and the effect of the failure to appeal therefrom to arbitration.

The law is well established in this state that where, by the contract of the parties, a given person, such as the architect, the engineer, or the superintendent in charge of the work contemplated by the contract, is made the umpire or arbiter to determine differences which may arise in the performance of the contract, the certificate of such umpire is a prerequisite to recovery, in the absence of arbitrary refusal to give it, and is final and conclusive upon the parties in the absence of fraud, misconduct or palpable mistake on his part. *Craig v. Geddis,* 4 Wash. 390, 30 Pac. 396; *Hughes v. Bravinder,*

9 Wash. 595, 38 Pac. 209; *Schmidt v. North Yakima*, 12
Wash. 121, 40 Pac. 790; *Zindorf Construction Co. v. West-
ern American Co.*, 27 Wash. 31, 67 Pac. 374; *McKivor v.
Savage*, 60 Wash. 135, 110 Pac. 811; *State ex rel. Noble v.
Bowlby*, 74 Wash. 54, 132 Pac. 723. In the recent case of
*State ex rel. Noble v. Bowlby*, the contract contained a pro-
vision as follows:

"It is mutually agreed between the parties to the contract,
that, to prevent all disputes and misunderstandings between
them in relation to any of the stipulations contained in
these specifications, or their performance by either of said
parties, that the state highway commissioner shall be an
umpire to decide all matters arising or growing out of said
contract between them."

Touching the effect of this provision, we said:

"It is clear, we think, that the parties to this contract
contemplated that somewhere there should be an authority
whose determination as to these disputed matters should be
final, and it is equally clear that such authority should be in
the state highway commissioner. The mere fact that the
highway commissioner was a state official, and as such official-
ly was one of the parties to the contract representing the
state, is not, of itself, in the absence of any showing of fraud
or misconduct, sufficient to render his selection as umpire
nugatory . . . There is no showing here that the high-
way commissioner in making his awards to relator acted
arbitrarily or capriciously, or was guilty of any misconduct
that should disturb his award, and, until there is some such
showing, the award made by him must be accepted."

The same rule prevails in other jurisdictions. *Gilmore v.
Courtney*, 158 Ill. 432, 41 N. E. 1023; *Hudson v. McCart-
ney*, 33 Wis. 331; *Kennedy v. Poor*, 151 Pa. St. 472, 25 Atl.
119. In the case last cited, it is said:

"This reference [to the architect] was an essential part
of the contract voluntarily entered into by the parties. There
was no rule or policy of law which forbade it; and neither
party is at liberty to depart from it. There having been no
offer to prove that the architect had acted in bad faith, his
decision must be treated as final."

The same rule applies where the contract of the parties provides for a submission of matters of difference to arbitrators. *North Coast R. Co. v. Kraft Co.*, 63 Wash. 250, 115 Pac. 97; *Lidgerwood Park Water Works Co. v. Spokane*, 19 Wash. 365, 53 Pac. 352. It will be noted that the contract here in question provides, in the first section, that the work shall be done to the satisfaction of the architects, and in the ninth section that all payments shall be made upon written certificates of the architects that such payments have become due. As to these matters, there is no provision for a reference to arbitrators. The contract also provides that the architects shall determine and certify in the first instance the following matters: In section 3, the amount to be added to or deducted from the contract price because of any alterations in the plans; in section 6, the amount of loss or damage to the owner because of failure of the contractor to deliver the material at the times provided in the contract; in section 7, extensions of time to be allowed to the contractor because of delays occasioned by the owner, architects or any other contractor, but this only upon written claim therefor made within twenty-four hours of such delay; and in section 8, the amount of damages sustained by either party on account of delay of the work by the other party. As to all of these things, there is a provision by reference to section 3, that, in case of dissent from the architects' award by either party, the matter shall be referred to three arbitrators, one to be selected by each of the parties, and the third by these two. It would seem that the intention is too plain to require serious argument that, in case neither party appeals to arbitration from the decision certified by the architects on any of these matters submitted to their initial decision by the terms of the contract, their decision should be final and conclusive on the parties. In fact, our decision in *Dickerman v. Reeder*, 59 Wash. 405, 109 Pac. 1060, goes even further, holding that, when the contract provides for an appeal to arbitration, it is incumbent upon the party not satisfied

with the certificate of the architect to call for an arbitration under the terms of the contract or be bound by the architect's certificate. In that case, it does not affirmatively appear that the contract authorized the architect to certify to the things complained of. The case here presents a much stronger ground of estoppel against the contractor to dispute the certificate, since the contract unequivocally makes the architects' certificate a prerequisite to arbitration and, by necessary inference, a prerequisite to suit. Here, however, we are not called upon to decide whether it was the duty of the plaintiff, who was satisfied with the architects' certificate, to demand an arbitration before suing for the damages so certified. Neither party having demanded an arbitration, and neither having pleaded the failure to demand an arbitration in bar of the other's claim, that provision of the contract should be treated as waived by both parties, and the architects' certificate as to the things referred by the contract to their initial decision be regarded as final and conclusive, and we so hold.

We cannot indulge the defendant's suggestion that the plaintiff waived its right to rely upon the architects' certificate by introducing proof of the facts upon which it was made. The good faith of the certificate was put in issue by the defendant's answer. It was apparent at the outset that at some stage of the trial the plaintiff would be called upon to prove the *bona fides* of the certificate. Under the pleadings, this evidence was material. Any valid objection which could have been made at the time of its introduction would have gone only to the order of proof. No such objection was interposed.

It is undoubted law that the certificate of an architect or other umpire, though made conclusive by the contract, may be impeached for fraud or for such gross mistake as would imply bad faith. *Ilse v. Aetna Indemnity Co.*, 55 Wash. 487, 104 Pac. 787. But in this, as in other connections, the burden of proof of fraud is upon the party asserting it.

Here the charges of fraud are based upon the claim that the architects were incompetent, that they colluded with the owner, that some of the items were based on averages and that the certificate included items not referred to the architects for determination. The claim that the architect was incompetent was based upon the fact that his evidence shows that he had no technical knowledge of the process of manufacturing terra cotta, and did not know the exact time required for making it. We think this was far from sufficient to show his incompetency as an architect. The evidence shows that he had sufficient knowledge of terra cotta to detect its quality as good or bad when produced. Though in this instance he permitted his judgment to be overridden by that of the defendant's representative as to some of the terra cotta, he did so only on a guaranty that the terra cotta would not further check or mar the appearance of the building. If an architect were required to possess a technical knowledge of the process of manufacture of every kind of material going into the construction of a building, it would be impossible to sustain his certificate in any case.

The charge of collusion is based upon the fact that the architect, in computing the damages caused by the defendant's delay in furnishing the material, consulted with the president of the plaintiff company, and with the foreman of construction, who had charge of the work. There is no evidence whatever that he submitted his judgment to that of either of these men in computing the damages, or in determining the amount of the delay. It is true that some of the items of damages included in his certificate were based upon averages. For instance, in charging his own compensation for the extra time spent upon the job by reason of the delay, he took the average of his compensation for the whole time employed, and charged a part proportionate to the delay as added expense to the owner caused by the delay. This would have been competent evidence had the damages rested upon proof in the first instance rather than on his certificate.

A careful consideration of the evidence convinces us that the architect endeavored to make a fair estimate of the damages caused by the delay, basing his estimate on all sources of information at hand. The evidence offered in proof of the charges of fraud and collusion was far from possessing that clear and convincing quality required for the establishment of fraud.

The architects' certificate, however, did include two items which, by a fair construction of the contract, were not referred to their determination. It will be noted that, in the first section of the contract, the contractor guaranteed the terra cotta to be of even color, free from checks, square and of even bed, and guaranteed it not to crack or check, and that if cracks or checks should later appear, the contractor would replace the defective material without cost or damage to the owner of the building. Nowhere in the contract was the amount of damage resulting from this cause submitted to the determination of the architects. Their powers ended with an acceptance or rejection of the material. We think, therefore, that the $750 included in their certificate as damages for permanent defective terra cotta was improperly included, and hence not binding on either party. Damage from this cause, however, was set up in the complaint as a separate cause of action, and full proof submitted on both sides, independent of the certificate. This evidence was sharply conflicting. Several experts testified that all terra cotta contains fine check marks and that this was not unusually defective in that particular. Others testified to the contrary, and that the appearance of the building was much marred by the defect. The witnesses place the damage to the building so resulting, on the one hand at $800 to $1,000, and on the other at $40 to $50. Upon the whole record, we cannot say that the amount of damages from this cause fixed by the court at $500 was excessive.

The other item of damage which we think the architects had no authority to certify was that for loss of rent, which

they placed at $2,800 for the two months. We are clear that their authority in this particular was confined to a certificate as to the extent of the delay. The rental value of the building was a matter open to proof *aliunde*. We are of the opinion that the damage resulting from delays which it was contemplated by the parties should be certified by the architects were those resulting from matters with which they would necessarily be familiar and touching which the parties would naturally assume they would have peculiar knowledge. They had nothing to do with the renting of the building, nor can it be assumed that the parties, in making the contract, would attribute to them any special knowledge of rental values. We think that their certificate was, therefore, not binding on the parties in this particular, but only as to the period of time during which rents were lost because of delays caused by the defendant.

It does not follow, however, that the inclusion of these two items in the architects' certificate vitiated the certificate in other respects. The certificate would be void only *pro tanto*. *Heidlinger v. Onward Construction Co.*, 44 Misc. Rep. 555, 90 N. Y. Supp. 115. We know of no reason why the same rule should not apply to such a case as in case of arbitration, in which the rule is that where arbitrators pass upon matters submitted to them, but include also in their determination other matters not submitted, the latter, if separable, may be rejected and the award will be good as to the things properly included. *Doke v. James*, 4 Coms. (N. Y.) 567; *Cox v. Jagger & Belknap*, 2 Cowen (N. Y.) 638, 14 Am. Dec. 522; *Jackson v. Ambler*, 14 Johns. (N. Y.) 96; *Martin v. Williams*, 13 Johns. (N. Y.) 264.

The other items included in the architects' certificate were clearly items of damage resulting directly from the delay in the construction of the building occasioned by the defendant's default. They relate particularly to extra expense, labor, and material resulting from the inability to enclose and complete the building for two months beyond the time which

otherwise would have been necessary.   They were proper items of damage under the rule laid down in *Creech v. Humptulips Boom & River Imp. Co.*, 37 Wash. 172, 79 Pac. 633.   The increased cost of performing the work in the winter time was also damage naturally arising from the breach of the contract in the particulars referred to the architects.   It was the plain intention of the parties that they should be determined by their certificate.   *Meyer v. Haven*, 70 App. Div. 529, 75 N. Y. Supp. 261.

The architects' certificate of a delay of two months in the completion of the building due to defendant's default laid the foundation for proof of damage by loss of rents during that period.   We think that the correct measure of damages was the reasonable rental value of the premises for that time. *Stone v. Hunter Tract Imp. Co.*, 68 Wash. 28, 122 Pac. 370, 39 L. R. A. (N. S.) 180.   The plaintiff contends that this should be determined by contracts for rental and applications for rental during that period, citing *Jones v. Nelson*, 61 Wash. 167, 112 Pac. 88.   In the *Jones* case, however, there seems to have been no evidence offered as to the reasonable rental value of the property.   At any rate, that question was not discussed.   The opinion merely states that there was no evidence of any applications for rooms before the completion and delivery of the building.   We do not construe that decision as laying down a different rule from that clearly expressed in *Stone v. Hunter Tract Imp. Co.*   While actual contracts and applications would be some evidence of the rental value, they would not be conclusive.   *Balkwill v. Spencer*, 45 Wash. 600, 88 Pac. 1029.   That the plaintiff would suffer by delay to the amount of the reasonable rental value of the property, the defendant knew when it entered into the contract.   It could not be expected to know that specific contracts for rental would be offered or entered into for specific amounts.   The reasonable rental was clearly the measure of damages contemplated by the parties when they made the contract.   The trial court took this view, and admitted

evidence of the rental value. The plaintiff's president testified that the rental value of the building, beginning January 1, when it should have been completed, was $1,400 a month; that the lower story had been rented prior to that time at an agreed rent of $750 a month, to a tenant who was ready to move in January 1, but was delayed until March 1 because the building was not finished. A rental agent who has had the building in charge for rental ever since it was completed estimated the rental value of the two upper floors, containing twelve apartments, at $550 a month, beginning January 1, 1912, at which time he stated there was a fair demand for such property. He testified, however, that he had been able to rent only seven of these apartments, producing an income of $320 a month. Apparently none of these estimates were of the net rental value. None of them took into account the expenses connected with the operation of the building. We think that the evidence fairly justifies a finding of no more than $1,000 a month as the reasonable rental value of this property.

The damages certified by the architects, less the two items improperly included, and less also the contract price of the work, amount to $1,071.11. The damages found by the court because of the defective materials, which we do not feel warranted, on the evidence, in disturbing, is $500. The damage by reason of loss of rents for the two months, which we find fairly sustained by the evidence, is $2,000.

The judgment is reversed, and the cause is remanded with direction to cancel the defendant's claim of lien, and enter judgment in favor of the plaintiff for $3,571.11, the aggregate of these sums.

GOSE, MAIN, and CHADWICK, JJ., concur.