[No. 16128.   Department One.   April 12, 1921.]

## O. S. BROWN, *Respondent*, v. BENTON COUNTY, *Appellant*.[1]

HIGHWAYS (33)—CONTRACTS—PERFORMANCE—APPROVAL OF WORK. Under a highway construction contract providing that final payment was dependent upon a certificate by the engineer in charge or the state highway commissioner that the work had been completed in accordance with the contract, the final estimate of the balance due on the contract made by the engineer was the equivalent of a certificate of completion.

SAME (33). Where the state highway commissioner was not the final arbiter of the completion of a road building contract, his refusal to certify that the road was completed until certain additional work was done thereon bringing it up to the state highway department standard would not preclude the contractor from recovering the unpaid balance due, if he had performed the work according to the terms of his contract.

SAME (33). Under a road contract providing that "clay or other suitable binding material shall be added by the engineer, so that the surfacing will pack firmly under traffic," a contractor, who had put in the quantity and character of binding material that the engineer in charge directed, and otherwise complied with the conditions of his contract, would be entitled to payment of the balance due, though the county may have gone to considerable expense in putting

[1]Reported in 197 Pac. 7.

in additional and different binding material to make the road satisfactory to the county and to the state highway department.

'SAME (33). A clause in a road contract providing that "failure or neglect of the engineer to condemn unsatisfactory material or reject inferior workmanship shall in no way release the contractor" is inapplicable to a situation where the material alleged to be unsatisfactory was put in under the express direction and approval of the engineer in charge.

SAME (33). Where the county commissioner, who was ex-officio road commissioner of the district in which highway work was done, inspected the work from time to time, good faith required that he should have protested at the time, if he deemed the materials or manner of construction unsatisfactory.

Appeal from a judgment of the superior court for Benton county, Sessions, J., entered March 3, 1920, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*G. W. Hamilton* and *Moulton & Jeffrey*, for appellant.

*Andrew Brown* and *Grady & Shumate*, for respondent.

FULLERTON, J. — In January, 1918, the appellant, Benton county, acting through its board of county commissioners, entered into a contract with the respondent, O. S. Brown, by the terms of which the respondent agreed to rebuild a part of Permanent Highway No. 9 in the appellant county, according to certain "profiles, maps, plans, and specifications," which were attached to the contract. Generally, the contract provided for sub-grading the highway to a width of twelve feet (fourteen feet on the curves) so as to make the surface conform to certain defined gradients, and for depositing thereon gravel, with a suitable binder, to a depth of eight inches. Specifically, the contract provided:

"The sub-grade shall be brought to shape and true in crown and grade as required by the plans for securing the hard surface roadway. The finished surface of the sub-grade shall conform to the standard cross-section of the road and shall be at all places six inches below the grade as laid down for the finished roadway, and ruts or depressions in the finished sub-grade shall be filled with sound material and sub-grade approved by the engineer before the surfacing material shall be placed thereon.

"Gravel from approved gravel bars of the Columbia river shall be used on this work as far as practical. Gravel from other pits may be used after approval by the engineer.

"All material shall be screened or otherwise separated so that the gravel placed upon the road shall be of such size as to pass through a screen of $1\frac{1}{2}$ inch openings, and no gravel of greater dimensions shall be placed upon the road.

"A small percentage of clay or fine material will be allowed in the gravel, but if in the opinion of the engineer there be an excess of such clay or fine material, such excess shall be removed before the gravel is placed upon the road.

"Gravel shall be placed and spread to a uniform depth of 8 inches over the sub-grade and to a width of twelve feet, except as otherwise shown upon the plans or specifications. All curves shall be finished as shown on the detail plans herewith.

"Material shall be so distributed as to obtain the best results upon completion. Ruts caused by hauling over material already placed whether due to the contractor's vehicles or public traffic, shall be kept repaired and filled, by dragging the gravel already placed, dragging to be done daily if traffic is heavy or if material ruts badly.

"Clay or other suitable binding material shall be added as directed by the engineer, so that the surfacing will pack firmly under traffic, and the cost of placing such clay or binder shall be included in the price bid for the work.

"That in all cases of ambiguous expression or doubt as to the correct interpretation of the specifications, the matter shall be submitted to the county engineer, who shall make final decision as to. the disputed sections.

"Wherever the word 'engineer' occurs it refers to the county engineer of Benton county, or duly authorized deputy or assistants, by whom all directions and explanations necessary for the completion of the described work will be given.

"No deviation from the specifications or detailed plans will be allowed, unless written permission shall have been obtained previously from the engineer, with the consent of the board of county commissioners, by resolution and with the approval of the state highway department.

"The contractor shall provide safe and proper facilities at all times for the inspection of the work by the board or its authorized representatives. All materials and methods shall be subject to the approval of the engineer.

"Defective work may be condemned at any time before the final acceptance of the work. Notice of condemnation shall be given in writing by the engineer, such condemned work shall immediately be taken down and changed. Defective material shall at once be removed from the job and disposed of to the satisfaction of the engineer. Failure or neglect of the engineer to condemn unsatisfactory material or reject inferior workmanship shall in no way release the contractor, nor shall it in any way be construed to mean the acceptance of such work, nor shall final acceptance of such work bar the county of Benton from recovering damages in case fraud was practiced.

"The right is reserved by the engineer to make changes in the grades to balance the cuts and fills, and it is hereby understood that such change shall not invalidate the contract in any manner whatsoever.

"The county commissioners reserve the right to make such changes by resolution in the plans and spe-

cifications as may, from time to time, appear to them necessary or desirable, and all such changes shall in no wise invalidate the contract.

"It is understood and agreed by and between the parties hereto, that the work included in this contract is to be done under the direction and supervision of the county engineer or construction engineer, who may be designated the engineer, in charge by the board, and hereinafter called the engineer, and his decision as to the true construction and meaning of the profile, maps, plans and specifications and estimates shall be final.

"Payment shall be made for work and labor performed and material furnished under this contract, according to the lump sum price of nine thousand four hundred and eighty-six dollars ($9,486), and in no other manner whatsoever. The engineer shall determine the unit quantities and the proper classification of all work done and material furnished under the provisions of this contract and agreement, and his determination thereof shall be final, conclusive and binding upon the contractor. Partial payments upon this contract, not to exceed eighty (80) per cent of the work done, shall be made at the request of the contractor, once each month, said payments to be made upon the estimates of the engineer in charge.

"Final payment for said work shall be made within thirty (30) days after the entire work has been completed and accepted and certificate has been made by the engineer and the state highway commissioner that such work has been fully completed in accordance with the contract, profiles, maps, plans and specifications."

The respondent entered on the performance of the contract and completed its performance to the satisfaction of the engineer in charge within the time limited in the contract for its completion. The work as performed, however, did not satisfy the board of county commissioners of the appellant county. In the progress of the work, the contractor added to the gravel as

a binding material, under the direction of the engineer, the ordinary surface dirt found along the sides of the highway. This did not cause the gravel to pack "firmly under traffic," and the board of county commissioners conceived it not to be a compliance with the contract. The board thereupon caused additional and different binding material to be placed thereon at a cost to the county of $2,423.75.

As the work progressed, the contractor was paid on estimates furnished by the engineer the sum of $7,504.48. At the conclusion of the work, he was given a final estimate by the engineer showing a balance due of $1,981.52. No formal certificate was given by the engineer, either to the contractor or the county, certifying that the work had been "fully completed in accordance with the contract, profiles, maps, plans and specifications," nor was any such certificate issued by the state highway commissioner until after the additional work on the highway had been performed by the county.

The county refused to pay the final estimate, and this action was begun by the contractor against it to recover the amount thereof. The county, contending that the work performed by it on the highway was work which the contractor was obligated to perform under his contract, sought to offset the sum paid by it on account of the work against the contractor's claim and to recover from the contractor the difference between the amounts, which sum it alleged to be $438.03. The action was tried by the court sitting without a jury, and resulted in a judgment in favor of the contractor in the amount claimed by him. The county appeals.

As a preliminary question, the appellant argues that the respondent's action must fail because he failed

to produce a certificate, either from the engineer in charge or from the state highway commissioner, certifying that he had completed the work of rebuilding the highway in accordance with the plans and specifications. As to the engineer in charge, the final estimate of the balance due made by him was the equivalent of a certificate. Neither the contract nor any rule of law requires the certificate to be in any particular form. Any form of writing therefore which shows that the engineer approved and accepted the work as completed is sufficient, and that he did accept and approve the work as completed by the respondent, his final estimate conclusively shows. The county was in no manner misled, nor is it defending on the ground that the work did not meet with the approval of the engineer. Its contention is that it may, under the terms of the contract, refuse payment notwithstanding the work was performed to the satisfaction of the engineer, and notwithstanding he approved the work as a compliance with the contract.

We do not think it necessary to review the many cases cited by the appellant in support of its contention. It is sufficient to say that they are cases where the engineer, architect, superintendent or person in charge of the work refused to approve the work, and the attempt was made by the contractor to collect in spite of the refusal. A different rule is applicable in such cases, and a review of them would in no manner be enlightening on the question here presented.

As to the state highway commissioner, it appears in the record, as we have hereinbefore stated, that his certificate was filed after the county had performed the additional work on the road. While it appears from the pleadings that he refused to certify to the completion of the road until after this work was done,

the reason why he so refused does not appear. This was a permanent highway in which the state had an interest, and it may be that he refused because he thought the road not such as the state could accept, even though completed in accordance with the plans and specifications. But we cannot think the question material on whatever grounds the certificate may have been refused.

Conceding the refusal to issue the certificate to be evidence that the commissioner concluded that the contractor had not completed the work in accordance with the terms of the contract, it is not conclusive of the question. The contractor may recover the unpaid balance if he can show that he performed according to the terms of the contract, notwithstanding the refusal. The rule might be different had the contract made the commissioner the final arbiter on the question. But this contract does not make him the final arbiter. It empowers another to act in that capacity, and if the contractor performed to the satisfaction of that other, the commissioner could not rightfully withhold the certificate as between the contractor and the county. Since the state had an interest in the highway, and since the construction work was partly paid for out of state funds, it may be that the certificate was necessary in the settlement between the county and the state. But its purposes in this respect have been accomplished. The county has the certificate of the commissioner and had it at the time the contractor began his action.

On the merits of the controversy, there is little if any dispute in the evidence that the contractor performed the work mechanically in accordance with the terms of the contract. He constructed the sub-grade to the required gradients, placed thereon gravel to the

required depth, and added the quantity of binding
material that the engineer in charge directed. The
binding material used, however, did not cause the sur-
face of the road to pack firmly under traffic. The
county's contention is that this was because of unsatis-
factory binding material, and in support of its right
to refuse acceptance of the work, it points to that
clause of the contract which provides that

"Failure or neglect of the engineer to condemn un-
satisfactory material or reject inferior workmanship
shall in no way release the contractor, nor shall it in
any way be construed to mean the acceptance of such
work."

But while we think it can be seriously doubted
whether in any case the selection of a particular ma-
terial by an engineer, or other person appointed to
make the selection, can be said to be the failure or
neglect of the engineer or other person to condemn
unsatisfactory material, we are clear that the clause
in the present contract cannot rightfully be given such
a construction. We have quoted enough from the con-
tract to show that the contractor had very little dis-
cretion as to the choice of materials. He was obligated
to take gravel from approved gravel bars; he could use
a "small percentage" of clay or fine material with the
gravel if, in the opinion of the engineer, the quantity
was not excessive; he could add binding material only
as directed by the engineer; he was required to apply
to the engineer for all directions and explanations
necessary for the completion of the work; no deviation
from the prescribed plans and specifications were
allowed without the written permission of the engineer;
and he was required to do the work under the direction
and supervision of the engineer, whose decision as
to the true construction and meaning of the profiles,

maps, plans and specifications was made final. Unsatisfactory material which the engineer fails or neglects to condemn, in the light of these provisions ·of the contract, must mean something different than material which the engineer has himself selected. Clearly, after selecting the material and directing the contractor to use it in the construction work, he cannot be heard to say, after the work has been performed, that the material is defective or unsatisfactory, and the county can have no greater rights. The county selected the engineer and provided that the contractor should perform the work under his direction. It is therefore bound by his acts.

The evidence moreover is by no manner convincing that the material used for binding purposes was defective or unsatisfactory in the sense that it would under no circumstances serve the purpose for which it was intended. Both the contractor and the engineer testified that it was as good as any that could be obtained in the vicinity of the road, and fully equal to that which the county afterwards caused to be placed thereon. They state that it did not pack firmly under traffic because of the excessive dryness of the season; that no binder such as could be there obtained, not even that put on by the county, will pack under traffic without sufficient moisture, and that the county secured a better result because they applied it at a more favorable season. There was but little offered in contradiction of this testimony; nothing at all, in fact, from any road builder or engineer experienced in such work.

Again, the work was inspected from time to time while the work was in progress, by the county commissioner in whose district the road was situated and who is by law ex-officio road commissioner therein, and no objection was made by .him to the character of the

material used in the construction of the road. He does say that he told the contractor that the work "did not look good" to him, but he gave no directions as to changes, either as to the materials or manner of construction. It must have been as apparent to him at the time of these visits as it was to any one else that unsatisfactory materials were being used, if such was the fact, and manifestly, if materials were to be protested, good faith required that the protest be then made.

Considering the evidence as a whole, therefore, we cannot conclude that the unsatisfactory result obtained was due to any fault of the contractor. The fault lay either with the engineer in charge or with the plans and specifications under which the contractor was required to work. Our belief is that it rested with the latter. But whichsoever is blamable, the blame cannot be rested on the contractor. He performed the contract as between himself and the county, and is entitled to recover.

The judgment is affirmed.

PARKER, C. J., HOLCOMB, MACKINTOSH, and BRIDGES, JJ., concur.