Argued December 5, 1922, affirmed and remanded February 27, 1923.

## SPOKANE COUNTY *v.* PACIFIC BRIDGE CO.

(213 Pac. 151.)

**New Trial—Court may Set Aside Judgment and Grant New Trial When Satisfied Party has not had Cause Properly Presented.**
1. The authority of a trial court to set aside a verdict and judgment and grant a new trial extends to cases where by reason of some misapplication of the principles of law to which no exception has been taken, or in consequence of some inadvertence to which attention has not been called, the court is satisfied that a party has not had his cause properly presented.

**Contracts—What Defects in Performance of Construction Contract are Waived by Acceptance of Work and Payment Stated.**
2. Where the plans and specifications expressly provide all details of work and materials, and the owner makes no inspection until the finished improvement is presented for acceptance, when he accepts the same and pays therefor, he waives any complaint of defects apparent or discoverable by an ordinary inspection, but does not waive latent defects, of which he was ignorant.

**Highways—Where Contracts Make Decision of Engineer Final Only as to Construction and Meaning of Profiles, Maps, Plans and Specifications, Decision as to Performance not Conclusive.**
3. The rule that, where a contract for public work in express terms makes the decision of the engineer final as to the performance of the contract, such decision is conclusive on the parties, does not apply where a contract makes the decision of the engineer supervising the work final only as to the true construction and meaning of the profiles, maps, plans and specifications, but not in respect to performance of the work; plain language in the contract being required to make such a certificate conclusive.

Highways—Provision of Contract Held to Deprive Inspections and
   Approval of the Effect of Acceptance of Defective Work or
   Materials, or of Waiver in Respect Thereto.

4.   A provision in a paving contract that failure or neglect on the
part of the engineer to condemn unsatisfactory material or to reject
inferior workmanship should not release the contractor, or be con-
strued to mean acceptance of such work, and that no payment
should be construed to be an acceptance of defective work or im-
proper materials, which may appear within two years after such
payments, deprives inspections and approval, during progress of
the work, of the effect of an acceptance thereof, or waiver as to
a claim for damages for defective work and improper materials.

Highways—Where Detail of Work Left to Engineer and Contractor
   Performs Same as Directed, Held, Neither Engineer nor County
   can be Heard to Complain.

5.   Where a contract leaves a detail of the work to the deter-
mination of the engineer, such as the treatment of soft, springy
spongy places provided for in the contract, and the contractor
performs the work in respect thereto as directed by the engineer,
and uses a material which the engineer directs him to use, and exe-
cutes that detail of the work, in such case neither the engineer
nor the county can be heard to say, after the work has been
performed, that the material was defective or the work improper.

Highways—Provision in Contract Saving Right to Claim Damages
   for Defective Work and Material After Final Payment Held
   not to Apply to Known or Apparent Defects.

6.   A provision in a contract, allowing the county to claim damages
for breach resulting from defective work and improper materials
appearing within two years after final payment, is prospective, and
in the absence of a guaranty that the contractor would construct
the pavement in compliance with detailed specifications, or that
installation of the work would produce any certain result, no right
to claim damages for defects known or plainly visible to the public
officers clothed with the duty of rejecting or accepting the com-
pleted improvement survives acceptance of performance.

Highways—County, by Accepting Performance of Contract, Held to
   have Waived Claim for Damages for Defective Drainage.

7.   Where a paving contract required the contractor to excavate
drainage ditches along the road and place them in the condition
called for by the contract, the county, by accepting performance
of the contract, waived the right to claim damages for obvious,
but indirect, results, if any, to the pavement, which lack of drain-
age naturally would produce, as well as for the cost of completing
the excavation of ditches; it being equally as patent to persons
skilled in highway construction, as presumably the county officers
were, that absence of provisions for adequate drainage would result
in injury to the pavement, as was the asserted failure to excavate
the ditches as required.

Highways—Whether Pavement Defects Due to Patent Omissions to
   Excavate Ditches or to Latent Defects Held for Jury.

8.   Whether the defective condition of a pavement, which de-
veloped after acceptance of a work, was due solely to the patent

omission to excavate drainage ditches, or whether the same was due wholly or in part to latent defects, for which defendant contractor was liable, were questions for the jury under proper instructions.

**New Trial—Court Authorized on Its Own Motion to Set Aside Verdict and Judgment for Breach of Construction Contract, and Grant New Trial, Where Jury Awarded Damages for Patent Defects, Right to Which was Waived.**

9. Where, in an action for breach of a construction contract, the jury awarded plaintiff a large sum as damages for patent defects, as to which plaintiff previously waived the right to claim damages, the court on his own motion was authorized to set aside the verdict and judgment and grant a new trial.

From Multnomah: J. P. KAVANAUGH, Judge.

In Banc.

For appellant there was a brief over the names of *Mr. Wm. C. Meyer, Mr. Geo. W. Gearhart* and *Mr. Joseph B. Lindsley,* with oral arguments by *Mr. Meyer* and *Mr. Gearhart.*

For respondents there was a brief over the names of *Mr. Ralph E. Moody, Mr. James E. Fenton, Mr. Wm. D. Fenton, Messrs. McGuirk & Schneider* and *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. Dan J. Malarkey.*

McCOURT, J.—The plaintiff, Spokane County, State of Washington, commenced this action against the Pacific Bridge Company, hereinafter referred to as "defendant," and its surety, the United States Fidelity and Guaranty Company, to recover damages in the sum of $61,740, for alleged breaches of a construction contract, whereby defendant undertook and agreed to do all the work and furnish all the materials necessary to construct, improve and complete about thirteen and one-half miles of asphalt macadam pavement upon Permanent Highway No. 12, known as Palouse Permanent Highway, in Spokane County,

Washington, in accordance with, and as described in, the profiles, maps, plans and specifications made a part of the contract and governing the undertaking and improvement.

After the cause was at issue, a protracted trial was had to a jury, which resulted in a verdict in favor of plaintiff for the full amount prayed for in the complaint. A judgment was entered upon the verdict, but thereafter on motion of the defendants, the verdict and judgment were set aside by the trial court, and a new trial granted. Plaintiff appeals from the last-mentioned order.

1. Plaintiff insists that no error of law, prejudicial to the rights of the defendants, was committed by the court in the trial of the action, and inasmuch as there was in the record, substantial evidence to support the verdict, the action of the court in setting aside the verdict and judgment and granting a new trial constituted reversible error.

The authority of a trial court to set aside a verdict and judgment and grant a new trial is not restricted to the cases indicated in the foregoing statement of plaintiff's contention, but extends to cases where, by reason of some misapplication of the principles of law, to which no exception has been taken, or in consequence of some inadvertence to which attention has not been called, the court is satisfied that a party has not had his cause properly presented: *Archambeau* v. *Edmunson,* 87 Or. 476, 487 (171 Pac. 186); *Cathcart* v. *Marshfield,* 89 Or. 401 (174 Pac. 138); *Duniway* v. *Hadley,* 91 Or. 343, 346 (178 Pac. 942); *State* v. *Evans,* 98 Or. 214, 221 (192 Pac. 1062, 193 Pac. 927); *Bottig* v. *Polsky,* 101 Or. 530, 539 (201 Pac. 188).

The contract out of which this action arose was made and performed in the State of Washington.

The improvement was authorized by the statutes of the State of Washington, known as the Permanent Highway Law, which provides for the construction of permanent state highways: Vol. III, Rem. & Bal. Code, § 5879–1 et seq.; 1 Pierce's Code, §§ 6157–6172.

The statutes mentioned constituted the County Commissioners of the several counties, agents of the state to contract directly and to oversee the work of constructing and improving permanent state highways within their respective counties, in accordance with plans and specifications approved by the State Highway Commissioner. Provision is made for the payment of such improvements from state funds, and the time and manner of payment is reserved to the state, and payment may be made only upon the certificate of the State Highway Commissioner to the State Auditor: *Willapa Harbor Sand & Gravel Co.* v. *Pacific County,* 103 Wash. 309 (174 Pac. 450); *McClung* v. *King County,* 119 Wash. 14, 204 Pac. 1064.

The contract was entered into on the fourteenth day of April, 1914. The defendant soon thereafter entered upon the performance of the contract, and on or before the twenty-first day of October, 1915, defendant claimed and represented that it had fully completed its contract; thereupon, in conformity with the contract and the Permanent Highway Law, the County Engineer and the State Highway Commissioner examined the improvement, and each certified that the same had been completed in accordance with the plans and specifications; the County Commissioners of plaintiff approved the final estimate and certificate of the County Engineer, and thereafter final payment was made upon the contract price.

Soon after completion, the surface of the road began to break, crumble and give away in a number of

places, and although plaintiff attempted to repair the road during the summer of 1916, the same continued to break, until in the spring of 1917 the pavement laid by defendant had very largely gone to pieces. Plaintiff then commenced an investigation of the condition of the pavement and the manner in which the same had been constructed, with the result that this action was commenced.

The improvement which defendant undertook to construct included: (1) An asphaltic macadam pavement, full six inches in thickness and sixteen feet in width, laid upon the roadway in a trench of the full width of the finished pavement, and of the depth below the established and constructed grade equal to the thickness of the finished pavement, and (2) A drainage ditch on each side of the road, the edge of the bank of which should be eighteen feet distant from the center of the road. To afford drainage for the sub-base upon which the pavement was to be laid, the specifications required that the bottom of the ditch should be two feet wide and two feet below the grade of the crown of the road, and to provide surface drainage for the highway, the specifications required that an earth shoulder, having the same slope as the pavement, should be extended from the pavement on each side for a distance of four feet, and thence with a sharper slope to the bank of the drainage ditch.

The contract contained the following paragraphs:

Paragraph III: "It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction and supervision of the County Engineer and hereinafter called the Engineer, and his decision as to the true construction and meaning of the profiles, maps, plans and specifications and estimates shall be final."

Paragraph VII: "Partial payments upon this contract, not to exceed eighty (80) per cent of the work done, shall be made at the request of the Contractor, once each month, said payments to be made upon the estimates of the Engineer in charge. * * Final payment for said work shall be made within thirty (30) days after the entire work has been completed and accepted and certificate has been made by the Engineer and the State Highway Commissioner that such work has been fully completed in accordance with the contract and profiles, maps, plans and specifications * * ."

Paragraph X: "The Contractor shall provide sufficient safe and proper facilities at all times for the inspection of the work by the Board or its authorized representatives. * * All materials and methods shall be subject to the approval of the Engineer.

"Defective work or material may be condemned by the Engineer at any time before the final acceptance of the work. Notice of condemnation shall be given in writing by the Engineer, and such condemned work shall be immediately taken down or changed. Defective material shall be immediately removed or disposed of to the satisfaction of the Engineer. Failure or neglect on the part of the Engineer to condemn unsatisfactory material or to reject inferior workmanship shall in no way release the Contractor, nor shall it be construed to mean the acceptance of such work, nor shall the final acceptance bar the County of Spokane from recovering damages in case fraud was practiced."

Paragraph XI: "It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be evidence of the performance of this contract either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials which may appear within two (2) years after such payments."

Paragraph XII: "The work and material covered by this contract shall be at the sole risk of the Contractor until the same shall have been finally accepted by the Engineer, Board and State Highway Commissioner * * ."

Plaintiff in its complaint specified and enumerated many details of improper and defective materials and workmanship alleged to have been used and employed by defendant in constructing the pavement, with the result that the pavement constructed by defendant was inferior to, and of much less value than, that which defendant contracted to build, and that by reason of such departures from the requirements of the contract, and the failure of defendant to construct drainage ditches, presently mentioned, as required by the contract, the pavement to a large extent, prematurely crumbled and gave away, to plaintiff's damage in the sum of $50,418. None of the defects mentioned, due to defective material or improper workmanship, was apparent upon an examination of the finished pavement.

Plaintiff further alleged in its complaint that for at least one half of the entire length of the highway, defendant did not excavate any drainage ditches, and that where such ditches were excavated, defendant left therein all the way from .10 feet to 1.35 feet of material, which must be excavated in order to make said ditches to conform to the plans and specifications, and that by reason thereof, plaintiff was damaged in the sum of $11,322, the sum it would reasonably cost to excavate said ditches to the depth and in the manner required by the contract. The omitted or insufficient excavations of the drainage ditches were apparent upon examination of the work before and at the time it was accepted, as was also in some measure, the injurious effect that lack of proper drainage, due

to the absence of such ditches, would have upon the finished pavement.

Plaintiff did not make any charge of fraud in its complaint, and does not rely for recovery upon fraud or collusion.

The answers of the defendant and its surety presented the defenses: (a) That the work was fully performed and completed by defendant in strict accordance with the contract and the profiles, maps, plans and specifications governing the work, and (b) That the work was prosecuted and fully completed under the immediate and constant supervision and direction of the County Engineer of plaintiff, and that the inspection and approval of the work as it progressed, by the County Engineer, and its final acceptance by all the county and state officers upon whom a duty was imposed in that behalf, followed by payment of the contract price, precluded plaintiff from thereafter asserting that the work was not performed in accordance with the contract.

The parties offered proof to sustain their respective claims, above stated, and in addition, defendant offered evidence tending to show that the pavement required by the contract was not suited to the locality, and that the insufficiency of the base-course of the pavement and the foundation upon which it rested, of which plaintiff complained, was due to directions and instructions given by the County Engineer in respect thereto, which under the contract, defendant was bound to follow.

The evidence of damages given by plaintiff was divided into two items, conforming to its claims above stated, and the verdict of the jury was the sum of those two items, or $61,740.

2. Where a contractor undertakes to construct and complete an improvement in accordance with plans and specifications that expressly provide for all the details of the work and materials entering therein, and the work is not inspected by the owner as it proceeds, but the finished improvement is presented to the owner for acceptance, and the latter accepts the same and pays therefor, the owner waives the right thereafter to complain of such defects as are apparent or discoverable by an ordinary inspection, but does not waive latent defects of which he was ignorant at the time, or which may appear thereafter: *Seaside* v. *Randles,* 92 Or. 650, 663, 667 (180 Pac. 319), and cases cited therein.

In the case last cited, the following from 6 R. C. L. 991, was quoted with approval:

" 'Where work is accepted with knowledge that it has not been done according to the contract, or under such circumstances that knowledge of its imperfect performance may be imputed, the acceptance will generally be deemed a waiver of the defective performance. But this rule does not apply to latent defects. The acceptance of work which has been defectively done, the defects being unknown and not discoverable by inspection, does not amount to a waiver of the imperfect performance': *Flannery* v. *Rohrmayer,* 46 Conn. 558 (33 Am. Rep. 36) ; *Van Buskirk* v. *Murden,* 22 Ill. 446 (74 Am. Dec. 163) ; *Brent* v. *Head, Westervelt & Co.,* 138 Iowa, 146 (115 N. W. 1106, 16 L. R. A. (N. S.) 801) ; *Ludlow Lbr. Co.* v. *Kuhling,* 119 Ky. 251 (83 S. W. 634, 115 Am. St. Rep. 254, and note) ; *Thompson Mfg. Co.* v. *Gunderson,* 106 Wis. 449 (82 N. W. 299, 49 L. R. A. 859) ; *Iaege* v. *Bossieux,* 15 Gratt. (Va.) 83 (76 Am. Dec. 189).''

3. The contract in the instant case made the decision of the engineer who supervised the work final as to the true construction and meaning of the profiles,

maps, plans and specifications, but did not make his decisions in respect to performance of the work final and conclusive upon the parties, and therefore the cases do not apply which hold that where a contract for public work, in express terms, makes the decision of the engineer final as to the performance of the contract, such decision is conclusive on the parties. Plain language in the contract is required to make such a certificate conclusive: *Williams* v. *Mt. Hood Ry. & Power Co.,* 57 Or. 251, 258 (110 Pac. 490, 111 Pac. 17, Ann. Cas. 1913A, 177); *Rogue River Assn.* v. *Gillen-Chambers Co.,* 85 Or. 113, 119 (158 Pac. 728, 165 Pac. 679); *Baumgartner* v. *Renton,* 96 Wash. 588 (165 Pac. 484); *Bavaria Investment Co.* v. *Washington Brick, Lime & Sewer Pipe Co.,* 82 Wash. 187 (144 Pac. 68), and earlier Washington cases cited therein: 9 C. J. 773.

4. The contention made by defendant and presented by its answer, motion for nonsuit, motion for directed verdict and requested instructions, that the inspection and approval by plaintiff's engineer, of the work as it progressed, estops plaintiff from thereafter asserting a claim for damages for defective work and improper material, is not tenable, for the reason that the contract contained provisions saving to plaintiff the right to make such a claim.

The rule, supported by numerous authorities, is stated in 9 C. J. 797, thus:

" * * where the work or materials is under the inspection of the owner or his architect during its progress, if the builder is not complying with the contract, it is the duty of the owner or architect to object to such work or materials as obviously do not comply with the contract, and on his failure to do so, the owner cannot, after the work is completed, claim that the work or materials was not in accordance with the

contract; but this rule does not apply where the contract contains a provision to the contrary.''

The contract in the instant case provided that—

''Failure or neglect on the part of the engineer to condemn unsatisfactory material or to reject inferior workmanship shall in no way release the contractor, nor shall it be construed to mean the acceptance of such work,'' and also that '' * * no payment shall be construed to be an acceptance of defective work or improper materials which may appear within two years after such payments.''

The provisions last quoted clearly deprive the inspections and approval made and given during the progress of the work of the effect of an acceptance or waiver by plaintiff.

Similar provisions in a contract came under review by the court in the case of *Baumgartner* v. *Renton, supra.* The court said:

''This provision clearly modifies the one relied upon by appellants, and makes the engineer's certificate conclusive only as to uncompleted and defective work, discovered later than two years after the completion and acceptance of the work. As this defect was discovered within the two years, the city was entitled to make claim for it.

''The appellants further contend that the respondent is estopped from questioning the sufficiency of the work for the reason that its inspector and city engineer were on the ground, saw the manner in which the work was being performed, and permitted it to go on. But the contract itself furnished an answer to this contention. By the contract the city reserved, not only the right to inspect the work while it was in progress, but the right to make claim for any defective work within two years after the contract work should be completed. The purpose of this was to protect itself against any incompetence or negligence on the part of its inspectors. The appellants engaged

in the work knowing that their failure to properly perform it would not be excused because of the failure of the inspectors to see that it was performed according to the stipulations. There can therefore be no estoppel within the time limited from the fact that the work of inspection was indifferently performed."

5. The doctrine expressed in the foregoing excerpt does not apply to cases where the contract leaves a detail of the work to the determination of the engineer, such as the treatment of soft, springy or spongy places, provided for in the contract in the instant case, and the contractor performs the work in respect thereto as directed by the engineer, and uses the material which the engineer directs him to use in executing that detail of the work, neither the engineer nor the county can be heard to say, after the work has been performed, that the material was defective or the work improper: *Brown* v. *Benton County,* 115 Wash. 373, 197 Pac. 7, 10.

The case last cited involved an improvement made under the Permanent Highway Law and a contract which apparently contained provisions identical with the contract in the instant case. The court said:

"Clearly, after selecting the material and directing the contractor to use it in the construction work, he (the engineer) cannot be heard to say after the work has been performed that the material is defective or unsatisfactory, and the county can have no greater rights. The county selected the engineer, and provided that the contractor should perform the work under his direction. It is therefore bound by his acts."

6. The provision of the contract allowing plaintiff to claim damages for breach of contract, resulting from defective work or improper materials, which de-

fects may appear within two years after final payment, is prospective, and does not embrace defects which were plainly apparent or discoverable upon reasonable inspection, when the work was presented by defendant for final inspection and acceptance. The contract does not contain a guaranty that defendant would construct the pavement in compliance with the detailed specifications, nor that the installation of the work would produce any certain result. In the absence of some such guaranty, we think no authority can be found which sustains the contention that a right to claim damages for defects known or plainly visible to the public officers clothed with the duty of rejecting or accepting the completed improvement, survives acceptance of performance of a contract, such as the one under consideration.

Plaintiff bases its claims to damages on the contention that the contract expressly reserves to it the right to complain of and recover damages for breaches of the contract due to defective work and improper materials employed or used in performing the work, which may appear within two years after final payment is made, even though such defective workmanship or use of improper materials, or both, were plainly apparent at the time of acceptance and final payment.

The trial court adopted plaintiff's construction of the contract, and over the objection and exception of defendant, instructed the jury generally that the final estimate of the County Engineer and his final certificate of completion, together with the approval of the State Highway Commissioner, and the payment of the balance of the purchase price, did not foreclose inquiry into the performance of the contract for defects that

might become apparent within two years from the final payment of the contract price.

On consideration of the motion made by defendant to set aside the verdict and judgment and for a new trial, the court concluded that departures from the contract that were plainly visible, or which might have been discovered by an ordinary inspection, were waived by the acceptance of the work and payment of the contract price. The ground upon which the court set aside the verdict and judgment was not assigned in the motion for new trial, unless it may be said to be included in the exception to the above-mentioned instruction.

The trial court was further of the opinion that the record did not enable the court to determine how much of the amount awarded by the verdict was assignable to patent defects, nor how much thereof was assignable to latent defects, and accordingly entered the order setting aside the verdict and judgment, and granted a new trial.

It is apparent that the jury awarded plaintiff $50,418 for faulty construction of the pavement, and also awarded plaintiff the further sum of $11,322, the amount required to excavate the drainage ditches and place them in the condition called for by the contract, The last mentioned sum was allowed for defects that were visible and patent upon the examination and inspection which the engineer, the board and the State Highway Commissioner were in duty bound to, and did, make under the provision of the contract and the statutes, when defendant presented the improvement for acceptance as completed.

The sum thus allowed by the jury for patent defects at first glance appears to be readily susceptible of being separated from the larger sum allowed for

defective material and improper workmanship entering into the construction of the paved roadway.

7. But there is testimony in the record to the effect that the early disintegration of the pavement was caused in part by the alleged failure of defendant to excavate the drainage ditches, the lack of which left the pavement without drainage facilities essential to its preservation. That the absence of provision for adequate drainage would result in injury to the pavement, ordinarily would be equally as patent to persons skilled in highway construction, as presumably were the County Engineer, the County Commissioners and the State Highway Commissioner, as the asserted failure to excavate the ditches as required. Plaintiff, by accepting performance of the contract, waived the right to claim damages for obvious, but indirect, results, if any, to the pavement, which lack of drainage naturally would produce, as well as for the cost of completing the excavation of such ditches.

8. Whether the condition of the pavement which developed after acceptance, was due solely to the patent omission to excavate drainage ditches, in which case plaintiff would not be entitled to recover damages, or whether the same was due wholly or in part to latent defects for which defendant was liable, were questions to be determined by the jury under proper instructions.

The trial court could not, and this court cannot, determine from the record that the visible departures from the requirements of the contract, consisting of omitted and incomplete drainage ditches did not contribute to the disintegration of the pavement. The evidence in the record relating to that aspect of the case was introduced by plaintiff. Defendant insisted,

and offered evidence to prove, that the ditches were excavated in compliance with the specifications, except where V-shaped ditches were constructed at the direction of the engineer, and that in many places the ditches had become filled by slides from the adjacent embankments.

9. The jury, authorized by the instructions given by the court, awarded plaintiff a large sum as damages for patent defects, as to which plaintiff had previously waived the right to claim damages. In that situation, the trial court, upon its own motion, was authorized to set aside the verdict and judgment and grant a new trial.

The order of the Circuit Court is affirmed and the cause remanded for a new trial.

AFFIRMED AND REMANDED.