Argued March 27, affirmed as modified April 30, 1952

# SNYDER *v.* AMERMANN, Jr.

### 243 P. 2d 1082

*C. S. Emmons* argued the cause for appellant. On the brief were Willis, Kyle & Emmons, of Albany.

*Windsor Calkins* argued the cause for respondent. On the brief were Calkins & Calkins, of Eugene.

Before HAY, Acting Chief Justice, and LUSK, LATOURETTE and TOOZE, Justices.

LATOURETTE, J.

This is an appeal by plaintiff from a judgment in her favor in the sum of $532. In her complaint she complains that on the 27th day of October, 1950, at about 7 p.m., she was walking in a pedestrian lane across Thirteenth avenue in the city of Eugene when defendant negligently drove his automobile into her,

throwing her some 15 feet into the air and against the curb of said avenue, causing her to sustain injuries and damages. She alleges that she sustained "severe and painful bruises and contusions in the region of her lower ribs and on the left hip and sustained a severe wrenching and spraining of the muscles, tendons, ligaments of the left hip, and sustained severe bruises, contusions and sprains to the muscles, tendons and ligaments of her lower back, and was severely shocked, and that the sprain of plaintiff's lower back and hip will result in a permanent injury to her, all to her damage in the sum of $8500.00."

She further alleges that as a result of her injuries she was compelled to employ physicians, undergo hospital care and treatment and be transported by ambulance. She also claims that she lost earnings by reason of such accident. Her prayer for damages is for the total amount of her general damages and the special damages hereinabove referred to, in a specified sum.

Defendant in his answer admits that there was a collision between his automobile and the plaintiff at the time and place indicated, but denies the remainder of the complaint. He then charges by separate answer and defense contributory negligence on the part of the plaintiff, which is denied by plaintiff in her reply.

After a trial was had before a jury, the jury brought in the following verdict which totaled to the penny the special damages submitted by the court to the jury:

"We, the jury, duly empaneled and sworn to try the above entitled action, find for the Plaintiff and assess the amount to be recovered in the sum of $532.00."

Plaintiff moved for a new trial, one of her grounds being as follows:

"Misconduct of the jury in that the jury arbitrarily and capriciously and because of prejudice found that the defendant was negligent, that plaintiff had been injured, and allowed plaintiff only her special damages and damages for loss of wages, but capriciously and arbitrarily because of passion and prejudice against the plaintiff failed and refused to allow plaintiff any sum whatsoever for pain and suffering and other general damages when in truth and fact the existence of such damages was established by the evidence both of the plaintiff and defendant with such certainty so as to overcome any and all presumptions and inferences to the contrary and to be established as a matter of law."

The trial court denied the motion for a new trial and entered judgment on the verdict; hence this appeal.

■ Error is assigned in this court for the failure of the trial court to grant a new trial. The question posed is whether or not the verdict entered by the jury was a verdict for general damages or a verdict for special damages. If a verdict for general damages, of course there is no error. If a verdict for special damages, it cannot stand because, under the well-recognized rule of law, before a verdict for special damages may be entered in a case of this kind, there must be a general verdict. The trial court instructed the jury in regard to damages as follows:

"* * * You would be entitled to allow her for her pain and suffering, and allow her such sum as in your judgment would compensate her for injuries received, not exceeding the sum of $8500.00. If you find that she has been unable to carry on her regular work, and has lost her earnings or wages for a period of time, she would be entitled to com-

pensation for such loss not exceeding the sum of $375.00. And furthermore, if she is entitled to recover, she would be entitled to recover the reasonable sum of her hospital bill, ambulance and doctor bill, not exceeding the sum of $157.00.''

It will be seen that the verdict of $532 totals the loss of wages and the hospital, ambulance and doctor bills. The evidence is uncontradicted that the plaintiff was out of pocket the $532 claimed as special damages, and there is no argument in the brief to the contrary. All defendant has to say on this point in his brief follows:

"Particularly with reference to the realistic approach urged by the appellant, it seems that the jury adopted it, taking the view that the plaintiff having received superficial bruises, which she explained to the jury, supported by her witnesses who testified that she had told them the same thing, sought to recover $8500.00, and was reasonably entitled to $532.00 as damages. They very reasonably ascribed her nervousness, which she testified actually existed before the accident, to an infirmity common to women of her age.''

From the above, it is evident that the defendant diagnosed the jury's verdict as one for special damages. It is said that the jury thought that plaintiff "received superficial bruises'', and that her nervousness was due "to an affirmity common to women of her age.''

■ It is our opinion that the verdict rendered by the jury was a verdict for special and not general damages. The verdict finds for the plaintiff and assesses the damages in the sum of $532, the exact amount of the special damages claimed, proved and undenied.

■ "We * * * find for * * * Plaintiff'', standing alone, simply means that the issues, other than damages, have been resolved in favor of plaintiff, but

could not be considered as a verdict for general damages because it would not have legal efficacy, lacking in a damage finding. That part of the verdict reading, "and assess the amount to be recovered in the sum of $532.00.", identifies the verdict as one for special damages since the amount is identical with the claims of plaintiff for special damages. It is, therefore, clear that the jury intended the verdict to be one for special damages.

In the case of *Hall v. Cornett*, 193 Or. 634, 240 P2d 231, the jury at first returned a verdict into court for $1 general damages and the further sum of $1,006.40 for special damages. The court sent the jury back with instructions that if the jury found for plaintiff she was entitled to reasonable compensation for her damages rather than a nominal amount. The jury returned a second verdict which was for $300 general damages and $707.40 special damages, being the aggregate amount of the damages awarded on the first verdict. The trial court set aside the verdict for the misconduct of the jury. We affirmed. The principle involved in that case and in the instant case is the same, although the *modus operandi* is different. We believe, therefore, that the jury, in disregarding the court's instructions, was guilty of misconduct, and that the court erred in not granting plaintiff a new trial.

Ordinarily, in a case of this kind, it should be sent back for a retrial where error is found. In the present case, the questions of negligence, contributory negligence, proximate cause and special damages have been resolved by the jury adversely to the defendant so that there remains only the question of the amount of general damages to be adjudicated.

■ In the case at bar, the accident happened in October, 1950, the complaint was filed on December 20, 1950, and the judgment was entered in March, 1951. If the matter were sent back for retrial, another year or more could pass before the termination of the law suit. In order to facilitate the disposal of the cause and to prevent costs and disbursements which would result from the second trial *(Wright v. Wimberly,* 94 Or 1, 16, 184 P 740; *Knight v. Beyers,* 70 Or 413, 418, 134 P 787), we are disposed to terminate the matter in this court under Article VII, § 3, of the Oregon constitution, the provision applicable being as follows:

"* * * or if, in any respect, the judgment appealed from should be changed, and the Supreme Court shall be of opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered in the same manner and with like effect as decrees are now entered in equity cases on appeal to the Supreme Court;".

We have the entire record here, including the transcript of testimony, and we are of the opinion that from the record it can be determined what judgment should have been entered in the court below.

■ We have held on numerous occasions, beginning with *Hoag v. Washington-Oregon Corp.,* 75 Or 588, 144 P 574, 147 P 756, that, under Article VII, § 3 of the constitution, where error has been committed in the lower court, all elements being present, we have the authority to reduce verdicts where the record warrants it and have exercised such authority. We likewise have authority to increase verdicts since we try the case under such constitutional provision, when the

situation is appropriate, *de novo* on the record as a suit in equity.

The uncontradicted evidence shows that as a result of the collision plaintiff was thrown into the air, "sat down awfully hard.", and then "rolled about four or five times," and finally came to rest in the gutter. She was "dizzy-headed" and was taken to the hospital by ambulance. A doctor was called who cared for her at the hospital where she remained five days. She had a hard time walking and had no sense of equilibrium because her side and back hurt so much that she could not walk. She suffered pain in her left hip and the lower part of her back. She was unable to sleep, even up to the time of the trial. The pain also persisted until then. She also had pain at her waistline and suffered nervousness. She returned to work several weeks after the accident but could not hold down her job because she had "just a sort of a collapse,". She would "shake and cry" and could not get "control" of herself. She was unable to continue her work and had to cease. She was required to take medicine to relieve the pain up to the time of the trial. When sitting in a chair, she would get so stiff that it was "just almost an impossibility for her to get up out of a chair." Her condition remained practically the same up to the time of the trial. The size of her hip, where injured, was reduced about two-and-one-half inches.

Plaintiff's physician, Dr. Endicott, who had given plaintiff a complete physical examination prior to the accident, testified that plaintiff had a low back strain, a large bruise over her hip joint, and "definite tenderness over the left hip joint, and resistance to motion in the left hip joint because of pain." His

diagnosis was "an acute sprain of the hip, and residuals of pain, and with the possibility of chronic hip pain development." Dr. Endicott examined plaintiff shortly before the trial and as to the result of his examination testified:

"Q What do you think about that hip pain as to permanency?

"A Well, the two things of the three points that she did have that I examined, in relation to the accident, why the hip pain has been the most persistent and has been chief complaint both times, and there are still findings that warrant her pain, I believe. And as far as the permanency is concerned, there is evidence from this that there has not been too much improvement.

"On my first examination I did give you my diagnosis and prognosis that this pain might become chronic, though low-grade, and it to date has remained so. As to further progress, I can only say that it has been the most persistent thing and it still is tender.

"Q Do you believe it is chronic?

"A Well, I believe that it is chronic now; yes, I do.

"Q And when you say chronic, what do you mean as to being permanent?

"A Well, a chronic disease is something that persists for a long period. And I believe that with the persistence with which it has persisted, that you now could call it a chronic pain.

"Q Will she continue to have that?

"A Well, I think that she probably will have it to a great extent, yes.

"* * * * *

"Q You believe that her trouble in her hip is permanent?

"A I think that some of the damage that has been done in her hip is permanent, yes."

Patricia Snyder, plaintiff's daughter, testified as to plaintiff's condition after the accident and, in the main, corroborated her mother. She told of the bruises on her body, about her nervousness, her inability to sleep, of her complaints, and of the treatments plaintiff underwent for the relief of pain.

Defendant's witness, Dr. Brooke, examined plaintiff and testified:

"A Well, to boil it all down, about the only thing I found was a little tenderness deep in the left buttock over the ischium tuberosity. That is the bone you sit on. That is the sole finding except for the other evidences of nervousness and tension.

"Q How do you find that tenderness?

"A Push on it.

"Q By pushing on it? And as far as her back was concerned or her leg, that was the only point where you could find any tenderness, is that right?

"A Well, the only other sign that I recall here and find from my notes was this flattening of the back. Normally you have a little curve in the back like this (indicating). But hers was flat, straight up and down which indicates a muscle spasm. Then there was this tenderness that I spoke of.

"Q What significance does that have, what findings—did that have anything to do with the accident, or can you tell?

"A Well, it was my impression—is that what you meant?

"Q Yes.

"A That the patient had not sustained any structural damage, any severe damage to the bony framework. That she had, however, sustained probably some contusions and abraisons and strains.

"Q Is that, in ordinary language, bruises, generally?

"A Well, she was scrambled up in the accident, and I imagine she sprained and strained some of

the soft tissues, the ligaments around the pelvis and the lower back. And probably when she lit she got a good bruise over the—well, her word is the best, right over the bottom.

"Q Now, Dr. Brooke, were any of these injuries that you saw of a permanent nature?

"A I didn't think that she would have any permanent residuals from her injuries."

■ We are of the opinion that $2,500 would reasonably compensate plaintiff for the injuries suffered by reason of the accident. Judgment will be entered in favor of plaintiff against the defendant for $2,500 general damages and $532 special damages.