Argued October 27, 1953; reargued March 17, reversed
June 17, 1954

# FISCHER *v.* HOWARD

271 P2d 1059

*William Schroeder,* of Vale, and *Roy Kilpatrick,* of Canyon City, argued the cause for appellant. On the brief were Lytle, Kilpatrick & Schroeder, of Vale.

*Martin P. Gallagher* argued the cause for respondent. On the brief were Gallagher & Gallagher, of Ontario.

REVERSED.

ROSSMAN, J.

This is an appeal by the defendant from an order of the circuit court which sustained a motion made by the plaintiff for a new trial. The action in which the challenged order was made was based upon two charges of assault and battery. The complaint (amended) averred that the defendant, on June 23, 1950, and again on July 29, 1950, assaulted and beat the plaintiff. For the purported assault of June 23 the plaintiff sought $100 special, $1,000 general, and $2,500 punitive damages. For that of July 29 he demanded $500 special, $7,500 general, and $5,000 punitive damages. The answer (amended), in addition to denying the assaults and the alleged injuries, pleaded self-defense.

Following is a copy of the verdict which the jury returned:

"We, the Jury duly empanelled in the above entitled cause find for the plaintiff on his first cause of action and fix his damages as follows:
Compensatory Damages .................. $ None
Punitive Damages ............................. $ None

and also find for the plaintiff on his second cause of action and fix his damages on the second cause of action as follows:
Compensatory Damages .................... $ 1.00
Punitive Damages ............................. $ 1.00
Special Damages .................................. $35.00"

The verdict bore the signatures of all twelve jurors. When the verdict was returned, counsel for both parties were present. Neither made any objection to the verdict nor asked that the jury be sent out again to express its verdict in a different form.

Based upon the verdict, the court entered a judgment which, after reciting the verdict, proceeded as follows:

"It is ordered and adjudged that the plaintiff, Robert Fischer, do have and recover of and from the said defendant, Max Howard, the sum of $37.00; * * *."

Two days after the discharge of the jury and the filing of its verdict the plaintiff presented his motion for a new trial; it reads:

"(1) Misconduct of the jury in failing to award Plaintiff substantial general damages.

"(2) That after finding that the Plaintiff was entitled to special, compensatory and punitive damages, the verdict of the jury in fixing Plaintiff's compensatory damages at the sum of $1.00, was arbitrary, and capricious, against the uncontradicted evidence and contrary to the instructions of the Court.

"(3) That after finding that Plaintiff was entitled to special, compensatory and punitive damages, the jury arbitrarily and capriciously refused to allow Plaintiff any adequate compensation for pain, suffering, humiliation and loss of time, contrary to the uncontradicted evidence, and contrary to the instructions of the Court.

"(4) That action of the jury in allowing Plaintiff special damages of $35.00 for medical expenses, and refusing to allow adequate compensatory damages for pain, suffering, humiliation and loss of time for the injuries, which made the medical service necessary, is inconsistent, and the result of prejudice

and caprice, and is contrary to the uncontradicted evidence and instructions of the Court."

The plaintiff and the defendant lived upon adjacent tracts of land in Malheur County. Their two affrays, which they termed grapplings, stemmed from a dispute over water rights. They occurred upon, or near to, a road which separated the properties. Near at hand was an irrigating ditch—the source of their misunderstandings and personal animosities. In the course of the first grappling, the plaintiff suffered a twisted neck, so he swore, which necessitated the services of a chiropractic physician. He paid the latter $25 and lost several days from his employment. Before the second affray was over, the rolling struggle had taken the participants into the irrigation ditch. The cooling effect of the water quickly ended the matter. According to the plaintiff, he suffered a fractured rib in the second encounter and lost one month from his employment. He paid the physician who treated the fracture $35. The wages which he lost due to the injuries of the second encounter amounted to $300 or slightly more.

The two grapplings were substantially alike. In each instance, the defendant came upon the scene empty-handed, but the plaintiff possessed a shovel with which he was removing a dam from the irrigation ditch. In each instance, after some preliminary maneuvers had taken place, the defendant grabbed the shovel, threw it away and then the struggle ran its course. The parties were evenly matched; each was a lightweight.

The testimony, as transcribed, covers 325 pages. In addition, there are several exhibits. Much of the time of the trial was consumed in the efforts of each

of the parties to prove that he, not the other, was entitled to the water in the ditch.

The plaintiff claims that the verdict upon the first cause of action is for him and follows that claim with an argument that, although the jury found for him, it failed to assess his damages. Reliance is had upon § 5-405, OCLA (ORS 17.425), which says:

"When a verdict is found for the plaintiff in an action for recovery of money, * * * the jury shall also assess the amount of recovery; * * *."

Based upon that line of reasoning, it is claimed that the trial judge erred when he entered judgment upon the verdict which was returned upon the first cause of action.

The verdict upon the second cause of action is attacked by a different process of reasoning. *Snyder v. Amermann, Jr.,* 194 Or 675, 243 P2d 1082, and *Hall v. Cornett,* 193 Or 634, 240 P2d 231, ruled that if a jury awards a plaintiff in a personal injury action the amount of his special damages, it must also award him general damages. It is claimed that the award in the second cause of action of $1.00 as compensatory damages is nominal only, and therefore inadequate in view of the fact that the jury sustained the plaintiff's claim for special damages.

In defense of the verdict and the resulting judgment, the defendant argues that the verdict was, in effect, for him and cites *Snyder v. Portland Railway, Light & Power Co.,* 107 Or 673, 215 P 887. Proceeding with that proposition [that the verdict was virtually for him], he claims that the jury was under no duty to assess the plaintiff's damages. Further, he submits that the plaintiff waived his right to object to any informality or irregularity in the verdict when he

permitted the trial judge to discharge the jury without making any objection whatever to the manner in which the jury had expressed itself. The defendant calls attention to the fact that before the jury was discharged the plaintiff was fully apprised of the form of the verdict and that he had no more information concerning the verdict when he moved for a new trial than when the jury was discharged.

It will be noticed that the action under review arose out of an episode—a physical encounter between two neighbors—that any juror could readily understand. The case called for the application of no principles of law concerning physical encounters that were alien to the man in the street. As a result of a request made by one of the parties, the painstaking trial judge reduced his instructions to typewritten form and sent them with the jurors to the jury room. In language that any juror could readily understand, the instructions stated that if the jury found for the plaintiff upon the first, second, or both causes of action, it was the jury's duty to go on and assess his damages. They distinguished between compensatory, special and punitive damages. In language suitable for laymen, the instructions delineated the rules that govern the award of each of those classes of damages.

We have mentioned the fact that when the verdict was returned, counsel for both parties were present. The trial judge, after acquainting the parties with the verdict, inquired whether either wished to have the jury polled. Each replied in the negative.

Section 5-319, OCLA (ORS 17.355) says:

"* * * If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out."

Neither of the parties asked, before the jury was discharged, that it be required to correct any part of the verdict or that it "be again sent out." After the trial judge's inquiry as to whether or not anyone wished the jury polled had been answered in the negative, and no objection had been made to the verdict, the latter was filed and the jury was discharged.

When the previous decisions of this court which were concerned with verdicts similar to the one returned upon the first cause of action are examined without reference to the records in those cases, some appear to be in discord with others. Presently we will review all of our precedents and in so doing we will consult the records in the office of our clerk concerning some of the cases where resort to the file will be helpful.

Experience shows that, notwithstanding the efforts of trial judges to see that the jurors, witnesses and all others conform to the governing rules, irregularities sometimes occur. If, in such instances, counsel for the losing party, upon observing a departure from the governing rule, may remain silent but, nevertheless, later gain a new trial upon the very irregularity of which he was fully informed when he chose silence, his adversary will be put to expense, the time of the courts which is needed to keep their dockets abreast of demand will be subjected to strain, and the loser will get two bites at the cherry.

The foregoing convinces us that the rule which should control situations of the kind now before us is important. Cases presenting irregularities and informalities in verdicts are coming before us frequently. We shall, therefore, see whether our previous decisions, which the plaintiff claims are in discord, followed a

pattern and employed a rule which commends itself. Before turning to our precedents, we will spend a few moments with the rule which is generally employed.

In *Browning et al. v. Smith et al.,* 139 Ind 280, 293, 37 NE 540, the rule is stated as follows:

" * * * 'It is required of every one to take advantage of his rights at a proper time, and the neglect to do so will be considered as a waiver.' "

And in *Cowenhoven v. Ball,* 118 NY 231, 234, 23 NE 470, 471, the New York court said:

" * * * A waiver is a voluntary relinquishment of some right. It implies an election of the party to dispense with some advantage which he might, at his option, have demanded or insisted upon; and it is applied on the principle that, when a party whose right is to object takes no objection to the proceedings or to the power of the court to hear the case, he is held to have waived all objection to formal and technical defects. Not having spoken when he ought, he will not be permitted to speak when he would."

In 39 Am Jur, New Trial, § 14, p 39, it is said:

" * * * It is also a well recognized and frequently applied principle that a party litigant will be deemed to have waived, or will be considered as being estopped to rely upon, matters constituting grounds of new trial which come to his attention or knowledge during the course of trial, or of which he should, by the exercise of reasonable diligence, have acquired knowledge, where he fails to make objection at the time and seek to have the defects cured. In other words, one is not entitled to a new trial when it appears that he had knowledge of the irregularity of which he complains and did not promptly seek to have the defect corrected at the trial of the case, * * *. It is equally well settled that a party litigant who acquires knowl-

edge of misconduct on the part of a juror during the course of trial or of misconduct of his opponent, his counsel, or the court directly affecting a juror, and fails to make objection thereto and seek a remedy at the time, * * * is deemed to waive his right to assert that as a ground for new trial.''

The language just quoted states the rule applicable to the irregularities of many kinds that occur during jury trials notwithstanding the presiding judge's efforts to prevent them. The paragraph just quoted indicates that if counsel notices something untoward he must call it timely to the attention of the trial judge, for if he does not he may meet with a ruling that he waived his objection.

The following, taken from 64 CJ, Trial, § 916, p 1110, is applicable directly to irregular verdicts:

"Objection to irregularity or informality in a verdict must be taken at its rendition, * * * and before the jury are discharged, otherwise the objection will be deemed to have been waived. For example, a failure to object at the time of rendition of a verdict to the want of signature, * * * or the addition of interest to the amount of the verdict, or error in the amount of a verdict in regard to interest, or return of a general verdict when a special verdict is requested, * * * or a general verdict on separate causes of action, * * * is deemed a waiver of the irregularity. A failure to object to a verdict which does not dispose of all issues as to all the parties is a waiver of the defect. * * * The objection of irregularity should be taken by motion to set aside on that ground, and comes too late upon a motion for a new trial, or on appeal. A party who is not injured thereby cannot complain of the uncertainty of the verdict or of defects therein; but there is authority holding that plaintiff can complain of a verdict granting an insufficient recovery, unwarranted by any theory of the case. * * *''

Continuing, the same section says:

"A party claiming that a verdict should be clarified and reformed should make the request before the jury are discharged, * * *."

The same volume, at page 1188, § 978, says:

"* * * Also, objections to the jury's answers or failure to answer are waived when not made before the jury are discharged or, according to some authorities, on the rendition of the verdict. Failure to make a motion to have the jury sent back for answers or better answers may operate as a waiver. * * *"

The following is taken from Busch, Law and Tactics in Jury Trials, § 599:

"When the verdict, as returned, is improper in form or otherwise defective, the matter should be promptly called to the attention of the court and, depending upon the particular situation, a proper objection made and entry of the jury's return as a verdict protested.

"A failure to object is generally held to waive any informality in the verdict."

For excellent elucidation of the rule of practice which we are now considering, see Wigmore on Evidence, 3d ed, § 2350.

Evidently the practice which is described in the passages which we took from Busch and Corpus Juris had its beginning concurrently with the inception of trial by jury, for we observe that Thayer, A Preliminary Treatise on Evidence, says, at page 145:

"It was sometimes found, in preparing to give judgment, that the verdict of the jury was obscure or incomplete; the judges below had not questioned them enough. In such cases they were resummoned to the court in banc *ad certificandum*. This was

called the *certificatio*. One sees it in 1232, and 1237. In 1290-1, one who had caused the jury to be resummoned for the purpose, being asked in what the jury had been insufficiently questioned or had spoken obscurely, answered by merely repeating their verdict, which he seems to say is wrong. His adversary replied that the verdict is not obscure, and for a plain verdict *non potest esse certificatio set pocius attincta;* and she asks judgment and has it. In 1556, we read that 'Because the [special] verdict was not full and perfect, the plaintiff sued a certificate of assize to make the jurors come again to be more fully examined; who came again and made their verdict more certain.' "

Among the decisions which Busch cites in support of his statement is *Northern Pacific Railway Co. v. Urlin,* 158 US 271, 39 L ed 977, 15 SCt 840, wherein Mr. Justice Shiras, speaking for the unanimous court, said:

"The contention that the judgment below was invalid because the verdict of the jury was not signed by the foreman, as required by a section of the Code of Montana is, in our opinion, without merit. The record discloses that when the verdict was rendered, at the request of the defendant, the jury was then and there polled by the clerk, and each of said jurors answered that the verdict as read was theirs. Whereupon the plaintiff moved for judgment in accordance with said verdict; the motion was granted and judgment was ordered accordingly. No objection was made, or request that the verdict should be signed was then made by the defendant, and we think that the court below was justified in treating the irregularity, if such it were, as having been waived."

We now turn to the past decisions of this court which were concerned with verdicts containing irregularities or departures from orthodox form.

In *Schumacher v. Moffitt,* 71 Or 79, 142 P 353, the decision, written by Chief Justice McBRIDE, declared:

"The verdict was irregular, but the intent of the jury can be deduced from it, and, in the absence of any objection at the time of its rendition, it was sufficient; * * *."

*Goyne v. Tracy,* 94 Or 216, 185 P 584, was an action at law for money had and received, which was instituted in a justice of the peace court. The jury's verdict read: "We, the jury in the above-entitled action, find for the plaintiff." Before any judgment was entered upon the verdict, the defendant in the action, who became respondent when the cause reached this court, objected to the rendition of judgment in favor of the plaintiff, except for costs. The objection was overruled and the justice entered a judgment in favor of the plaintiff for the full amount of his demand, $213.05, together with costs. The defendant in the action (who later became respondent) thereupon sued out a writ of review. The circuit court sustained the writ. In affirming that court, our decision said:

"This being an action for the recovery of money, it is required by law that the jury shall assess the amount of recovery: Section 156, L.O.L. The verdict in question did not conform to this statute and hence gave the justice no authority to render a judgment upon it. The justice should have caused the jury to correct it or have sent the jury out again: Section 150, L.O.L."

The action of the circuit court, which remanded the the cause to the justice court for further proceedings, was affirmed.

It will be observed that in that case the verdict was incomplete. It afforded no basis for determining whether or not the jury had considered the amount

which should be awarded to the plaintiff. It will also be observed that the defendant directed attention to the incompleteness of the verdict before the entry of the judgment.

From *Printing Industry of Portland v. Banks,* 150 Or 554, 46 P2d 596, the following is taken:

"When the verdict was first returned into court by the jury and before it had been accepted by the court, it read:

'We, the jury, in the above case, being first duly empaneled and sworn to well and truly try the cause, find our verdict in favor of the plaintiff and against the following named defendants: Gus Moser, W. W. Banks, T. B. Handley, Tom Sweeney, in the amount of $——— claimed.'

"Thereupon the court instructed the jury to amend its verdict by fixing the amount of the recovery and the jury thereupon struck out the word 'claimed' and after the dollar mark inserted the figures '3798.01', which was the total amount of the claim sued on, and the jury was thereupon discharged. This action by the court is assigned as error.

"Clearly, the verdict first sought to be returned into court was informal and insufficient. Our statute, section 2-319, Oregon Code 1930, provides: '* * * If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out.' The action of the court, therefore, was proper."

*Snyder v. Portland Railway, Light & Power Co.,* 107 Or 673, 215 P 887, was an action for damages based upon charges of negligence in which the injury to the plaintiff's property was substantial. The plaintiff's averments that the defendant was negligent were denied and the evidence upon the issue was in conflict. The jury returned a verdict for the plaintiff in the

sum of $1.00 upon which the circuit court entered judgment. Later the plaintiff moved for a new trial and, as shown by the record in our clerk's office, assigned as grounds: "Misconduct upon the part of. the jury in awarding plaintiff only $1.00 damages * * * The verdict is against the law." The original record fails to disclose that plaintiff made any objection to the verdict when it was announced. It likewise fails to indicate that he requested that the cause be remanded to the jury. Plaintiff's counsel at no time denied that he was present when the verdict was returned, and this court evidently believed that the appeal required the court to do nothing more than construe the verdict. In construing the verdict, it ruled: "This verdict * * * was virtually a verdict for the defendant. By it the plaintiff was given one dollar more than he was entitled to." The decision reviewed the opinions of many other courts which interpreted in like manner similar verdicts.

The Snyder decision appears to be susceptible reasonably to the interpretation that a claimant to unliquidated damages who meets with a verdict for one dollar, and who wishes later to argue that the verdict is irregular or ambiguous, must avail himself, before the discharge of the jury, of the procedure authorized by § 5-319, OCLA, previously quoted. If he does not do so, but withholds his objections until he moves for a new trial, the issues presented by him will be confined to a construction of the irregular verdict.

*Reynolds v. Kanzler,* 126 Or 245, 269 P 230, was a proceeding in mandamus which was instituted in this court against the Honorable Jacob Kanzler, a judge of the circuit court. The plaintiffs who instituted the proceeding were a husband and wife, by the name of James and Minerva Reynolds, against whom another

couple, by the name of Richard and Mabelle Landis, had filed an action in the circuit court for the recovery of money. The facts which we will recount are taken, in part, from our opinion (*Reynolds v. Kanzler*) and, in part, from the record in our clerk's office. In the circuit court case of *Landis v. Reynolds,* the jury returned a verdict upon which Judge Kanzler refused to enter judgment. At that juncture the Reynoldses filed the proceeding in this court for a writ of mandamus which resulted in the decision now under review. Returning for a moment to the action in the circuit court (*Landis v. Reynolds*), we find the following: (1) the complaint averred two causes of action for damages in the unliquidated sums of $5,095.63 and $7,133.00; (2) the defendants filed an answer which put in issue the complaint's two causes of action and alleged five counterclaims aggregating $14,653.16; (3) all but $693.16 of the counterclaims were in unliquidated amounts; (4) a reply put in issue all of the counterclaims; (5) the cause was assigned to Judge Kanzler for trial; (6) the evidence upon all of the seven demands was in conflict; (7) at the conclusion of the trial, the jury returned two verdicts, one of which read as follows:

"We, the jury, duly empaneled and sworn to try the issues in the above entitled case, do hereby find as follows, to-wit:

"On plaintiffs' first cause of action we find that plaintiffs, Richard P. Landis and Mabelle E. Landis, are entitled to recover of and from the defendants, James A. Reynolds and Minerva D. Reynolds, damages in the sum of $2,854.49.

"On plaintiffs' second cause of action we find that plaintiffs, Richard P. Landis and Mabelle E. Landis, are entitled to recover of and from the defendants, James A. Reynolds and Minerva D. Reynolds, damages in the sum of $ None."

The other verdict follows:

"We, the jury, empaneled to try the above entitled action, find for the defendants in the sum of $2,975."

A trial order entered in the journal by Judge Kanzler, after reciting that the jury had returned the verdicts just quoted, continued as follows:

"which the presiding judge then read in open court in the presence of counsel for both parties and the jury; and the court being in doubt as to the effect of said writings retired to the chambers of said court with counsel for both sides; that after considering said matters in chambers it was decided by the court that said verdicts could not be received because the same were conflicting and untelligible [sic] and thereupon the judge returned to the bench and declared that such verdicts could not be received and that there had been a mistrial of the case and discharged the jury, but retained and preserved said verdicts, nor was any exception taken by defendants' counsel thereto; that the jury was not polled nor was the jury asked, after said verdicts had been read, whether the said writings represented their verdict or verdicts, but no juror expressed disagreement with said verdicts when the same were read, or at all, and there was no request by counsel on either side that the jury be asked whether said writings were their verdicts, nor was there any objection made at that time because of any failure to ask such question, the only objection made to said verdicts at that time being that they were conflicting and untelligible [sic]; that thereafter and on the same day a written motion was filed by defendants for a judgment for defendants on said verdicts for the difference between the amounts set forth therein as aforesaid * * *."

Later, Judge Kanzler denied the defendants' motion for the entry of judgment in their favor. At the same

time he "confirmed" the "declaration by the court of the mistrial" and ordered that "a new trial be and is hereby granted herein."

It will be seen from the order entered by Judge Kanzler that the Reynoldses were satisfied with the verdicts and moved for the entry of judgment upon them in their favor. When their motion was denied, they filed in this court the mandamus proceeding which we are now reviewing. It named Judge Kanzler as defendant, and, referring to the verdicts, demanded that he "enter a judgment thereon in favor of the defendants in said cause and against the plaintiffs therein in the sum of the difference between the amounts set out in said two verdicts, respectively, to-wit, the sum of One Hundred Twenty and 51/100 Dollars * * * or that you show cause to this court * * * ."

The above shows that when the verdicts were read, counsel for all parties were present. While the jury was still in the box, the judge and counsel retired to chambers. If plaintiffs' [Landis'] counsel at that time objected to the filing of the verdict, moved that the cause be remanded to the jury or invoked in any way the procedure rendered available by § 5-319, OCLA, the order fails to disclose the fact. If the verdict was, in fact, conflicting and unintelligible, § 5-319, supra, afforded a simple and inexpensive means of overcoming the deficiency. In lieu of resorting to that means, a mistrial was declared.

The opinion of this court, which referred to the verdicts as findings, declared:

"When the findings recorded above are read in the light of the pleadings, there is neither uncertainty, ambiguity nor indefiniteness therein.

Each party to the litigation alleged certain causes of action against the other; and these verdicts represent the expressed intention of the jury. * * * On this point, 22 Ency. Pl. & Pr. 915, states that if, from the data contained in the findings returned, the amount recoverable is determinable by a mere mathematical calculation, the findings are sufficient."

Then the decision quoted from the authority last mentioned the following:

"In the construction of a verdict, the inclination of the court will always be in favor of its validity, no matter what requisite may be apparently lacking, and the verdict will be supported if, from the terms of the finding and the contents of the record, enough material can be gathered for the formation of a complete verdict in all its essential details."

In allowing the writ, we said:

"The trial court is hereby directed to record the verdicts and pronounce judgment thereon."

The opinion deemed that the only question submitted for decision was whether or not the jury had expressed its findings with sufficient clarity. It found that the jury's findings—that is, its verdict—was understandable. In appraising the significance of that holding, it is useful to return to the verdict upon the second cause of action which read: "We find that plaintiffs * * * are entitled to recover of and from the defendants * * * damages in the sum of $ None." The second cause of action prayed for the recovery of $7,133. By comparing the verdict just quoted with the one returned in the case at bar upon the first cause of action, it will be noticed that there is no material difference between them.

*McLean v. Sanders,* 139 Or 144, 7 P2d 981, was based upon another verdict which was returned in a

trial over which Judge Kanzler presided. The McLean case was instituted by a young woman, nineteen years of age, in the district court against three police officers to recover compensatory and punitive damages upon a charge of false imprisonment. A jury in the district court returned a verdict in her favor for the sums sought. Upon appeal, the jury returned a verdict which read:

"We, the jury duly impanelled to try the above entitled cause, find our verdict for the plaintiff and against the defendants, and assess plaintiff's general damages in the sum of no dollars and further assess punitive damages against defendants in the sum of no dollars."

Judge Kanzler directed that the verdict be filed. Treating it as a finding for the defendants, he entered judgment that the plaintiff recover nothing. On the same day the plaintiff moved for a new trial. The motion was denied and the plaintiff appealed.

The opinion in the McLean case does not indicate whether or not counsel for the plaintiff was present when the verdict was returned. The brief filed by her counsel in this court stated: "The jury was discharged after rendering its verdict and no opportunity was afforded to have verdict corrected." The brief filed by the respondent did not challenge that statement and said nothing adverse to it. An examination of the file in the clerk's office, including a transcription of the oral arguments which were delivered when the case was presented to the court, shows that counsel for the plaintiff told this court: "In this case both counsel were in their offices when the jury returned and the judge did not notify them that the jury was in and discharged the jury and permitted counsel to enter judgment for defendants." Counsel for the de-

fendants did not challenge that statement. The decision of Department I, with one member dissenting, held that error was committed when the verdict was deemed in favor of the defendants and also when the motion for a new trial was denied. It expressed the belief that the situation was analogous to *Goyne v. Tracy* in which the verdict was: "We, the jury in the above entitled action, find for the plaintiff." It said:

"The gist of an action for false imprisonment is damage. Unless there was damage, the action cannot be maintained. The verdict as rendered is neither for the plaintiff nor for the defendants. If the jury had found that the plaintiff had sustained nominal damages only, that would have been sufficient, but having found, in effect, as the verdict shows, that the imprisonment was unlawful, it was bound, under the statute, to find that the plaintiff had sustained at least nominal damages
\* \* \*

"It is impossible to ascertain from this verdict whether the jury intended to find for the plaintiff or for the defendants. Because of its uncertainty in this respect, it is not sufficient to support a valid judgment."

Since the plaintiff in that case was denied her statutory right to be present when the verdict was received, and likewise her statutory right to move that the cause be remanded to the jury, in the event she believed that the verdict was irregular, she had not waived either of those rights. Obviously, a party who has not waived those rights is in a position to challenge a verdict received prematurely which is not free from ambiguity.

Although Mr. Justice RAND was the author of both the Snyder and the McLean decisions, the McLean opinion did not mention the one entered in the Snyder

case. As we have seen, there was no contention in the Snyder case that Snyder and his counsel were denied opportunity, before the discharge of the jury, to challenge the verdict or move that the cause be remanded to the triers of fact. It presented nothing but an issue of verdict construction. In the McLean case, the plaintiff was denied, by the premature action of Judge Kanzler, opportunity to move for a remand of the case to the jury so that a verdict free from irregularities would be returned. The two cases present that material distinction, and that fact possibly accounts for the omission of the McLean decision to mention the other.

■ *Klein v. Miller,* 159 Or 27, 77 P2d 1103, was an action for unliquidated damages which arose out of a collision of automobiles. The defendant filed a counterclaim. The verdict read as follows: "We, the jury * * *, find for the plaintiff and assess his damages at the sum of $ no dollars." The trial judge, after entering judgment for the defendant, sustained a motion made by the plaintiff for a new trial. His action in so doing was affirmed by this court but by a divided opinion. One justice, after referring to *McLean v. Sanders,* stated:

"* * * I should even be willing to accede to the overruling of precedent, if by doing so would result in making that action the decision of the majority. Since, however, the majority of this court is in favor of following the law as laid down in McLean v. Sanders, * * *. I concur in the result reached by the majority opinion."

Another dissented. His dissenting opinion pointed out that when the verdict was received, counsel for the plaintiff and the defendant were present and that no motion was made that the jury should retire and

express its findings in any other way. From his dissent, it appears that when a request was made that the jury be polled, a polling occurred. We see from the circumstances just related that the Klein appeal presented a different situation from the one in the McLean case. Unlike the latter, counsel were present when the jury returned its verdict. Notwithstanding the fact that counsel were present when the verdict in the Klein case was received, the majority opinion, which was written by Mr. Justice KELLY, did not mention that fact. Likewise, it did not take notice of § 5-319, supra, which, as we have seen, reads:

> "If the verdict be informal or insufficient, it may be corrected by the jury under the advice of the court, or the jury may be again sent out."

Justice KELLY, apart from quoting briefly from *McLean v. Sanders,* supra, and citing *Goyne v. Tracy,* supra, depended upon a passage which he took from Abbott's Civil Jury Trials and decisions cited in the footnote to the passage. The quotation declares that a verdict must state specifically the amount awarded. It did not concern itself with the methods employed by courts for correcting, before the discharge of the jury, irregular and informal verdicts. In § 399 of the fifth edition of Abbott, it is said:

> "Before a verdict, whether oral or sealed, is recorded, and the jury have been dismissed from their relation as such to the case, the court has power to require them to reconsider their verdict, not merely to correct a mistake in form or make that plain which is obscure, but to supply what is wanting, or alter it in substance, if they so agree."

The Klein decision made no reference to that principle or any phase of it. It cited a Minnesota decision which

construed a verdict reading, "in the sum of None $",
but overlooked *Reynolds v. Kanzler,* supra, in which,
as we have seen, this court was confronted with a ver-
dict expressed in substantially the same manner
("Damages in the sum of $ None"). And, likewise,
overlooked *Snyder v. Portland Railway, Light & Power
Co.,* in which the verdict was for the sum of $1.00. Jus-
tice KELLY's decision mentioned neither the Reynolds
nor the Snyder decision. Concerning the Minnesota
verdict, the opinion written by Mr. Justice KELLY
said: "This verdict was construed by the Minnesota
court to be a verdict for the defendant." It will be
recalled that *Reynolds v. Kanzler,* in dealing with the
verdict before this court in that case, held that the
plaintiff was entitled to nothing upon the cause of ac-
tion for which the jury gave him "damages in the sum
of $ None." The Snyder decision, in construing the
$1.00 verdict, said: "This verdict, however, was vir-
tually a verdict for the defendant." Yet the Klein
decision, after referring to the Minnesota opinion,
said:

> "To adopt the doctrine of the case last cited would
> have the effect of overruling McLean v. Sanders
> and Goyne v. Tracy, supra, which we are not pre-
> pared to do."

Plainly, the Klein decision was written oblivious of our
own holdings. It failed to take note of pertinent
precedents that came from our own pen and of a
statutory enactment in our compiled laws. No previous
decision of a court is entitled to persuasive effect when
it displays disturbing infirmities.

*Hall v. Cornett,* supra, was based upon charges of
negligence and averments that, as a result of the negli-
gence, the plaintiff sustained a personal injury. The

complaint prayed for damages, partly special and partly compensatory. After the jury had retired for deliberation it returned to the courtroom. We now turn to the bill of exceptions on file in our clerk's office which gives us the following:

> "THE COURT: Let the record show that the jury in this case is not now present in the courtroom. The jury returned and brought into court the following verdict: 'In the Circuit Court of the State of Oregon for Douglas County. Mary Hall, plaintiff, vs. Roger Cornett and Alvin N. Cornett, defendants. Case No. ———, Verdict. We, the jury duly empanelled and sworn to try the above entitled action, find our verdict in favor of the plaintiff and against the defendants and assess damages against the defendants in the sum of $1.00, as general damages, and the further sum of $1006.40 special damages. Dated this 2nd day of June, 1950. Signed Gus Peret, foreman.' The jury was polled and all voted 'yes'. The Court refused to receive the verdict and sent the jury back to the jury room to await further instructions. Let the record show that Windsor Calkins, attorney for the defendants, left for Eugene and is now in Eugene and not available. Mr. Geddes, if you wish to be heard on this verdict, I will hear you now.

> "MR. GEDDES: Yes, Your Honor. It is the position of the plaintiff in this matter that the verdict should not be received but, to the contrary, the jury should be sent back with instructions to reconsider the amount of general damages * * *."

As he proceeded, Mr. Geddes, according to the bill of exceptions from which we have been quoting, called attention to § 5-319, supra, and declared that by virtue of it "the Court does have authority to instruct the jury to correct the verdict and eliminate the insufficiency." Shortly, as is indicated by the following ex-

452

cerpt taken from the bill of exceptions, the trial judge ruled:

"THE COURT: Well, my view of the situation is that the jury has either found that both parties were negligent or that, at least, the plaintiff was guilty of contributory negligence and that the verdict is substantially a verdict for the defendants so far as general damages are concerned. The evidence in the case shows that this woman was in the hospital for ten weeks with a weight on her leg to reduce the fracture and if she is entitled to anything, she is entitled to substantial damages. They haven't given it to her by this verdict. They have attempted to give to her her special damages. The verdict is very inconsistent and I think it ought not to be received. On the other hand, I can't agree that it is a verdict for the plaintiff for general damages. The amount is only nominal. My view of the situation is that the jury should be brought back and told that the verdict is inconsistent; * * *. Call the jury back. (Jury returns) A case of this sort is divided into two parts. The first question for consideration of the jury is a question of liability and that is a question of fact for your determination under the evidence submitted here and under the instructions as to the law given you by the Court. You first then make your finding then upon liability and I explained to you the rules of law with reference to negligence, contributory negligence and the rules of the road and all of those matters in the case. According to this verdict which you have brought in here, you have allowed the sum of $1.00 as general damages. Now, if the plaintiff is entitled to recover in this case, she is entitled to recover a substantial amount or, rather, she is entitled to recover such an amount as would reasonably compensate her for the damages which she has sustained. The evidence in this case shows, without contradiction, that this woman was, received a broken leg and was in the hospital for ten weeks. I think you will have to agree with

me that $1.00 wouldn't compensate her for that. So, if you find in her favor, which, of course, is a question for your consideration entirely, you must find an amount which will reasonably compensate her for that damage. Before you can allow anything for special damages, there must be a verdict for general damages in more than a nominal amount. * * *''

The above excerpts taken from the bill of exceptions indicate the manner in which counsel and the trial judge employed the procedure which stems from § 5-319, supra.

After the jury had been reinstructed it returned with a verdict upon which judgment was entered. Later, a motion made by the plaintiff for a new trial was sustained and the defendant appealed. For reasons which are immaterial to the issues now before us, our decision set aside the second verdict and vacated the judgment based upon it. Although the regularity of the procedure taken by the trial judge in connection with the first verdict possibly was not germane to the appeal, it is clear that that procedure met with no disapproval by this court. Our decision said in part:

"It may be that this court will reconsider the ruling in the McLean and Klein cases in the light of the arguments presented in the two dissents when a case requiring such reconsideration arises."

*Snyder v. Amermann*, supra, which presented issues somewhat related to those in the present and the *Hall v. Cornett* cases, followed the decision of the latter.

The foregoing completes the review of our prior opinions. It will be observed that all of them, with the exception of *Klein v. Miller*, can be reconciled upon the principle that if counsel was afforded opportunity (1) to be present when the verdict was re-

turned, and (2) to examine the verdict before the jury was discharged, but failed to challenge the latter's regularity or the clarity of its phraseology, the court will go no further than to construe the verdict; that is, to determine its meaning. In short, the court will believe that its function is confined to the one which was performed in *Snyder v. Portland Railway, Light & Power Co.*, supra. Objections which urge irregularities and lack of proper form will be treated as waived unless they were voiced before the jury was discharged. Our decisions, with the exception of *Klein v. Miller*, conform to the procedure prescribed by § 5-319, supra, although they do not always acknowledge that the rule which they employed originated in that enactment. When reconciled in the manner just indicated, effect is given to § 5-319 and a simple rule of procedure is had which can be easily employed. The rule minimizes retrials. Any rule which obviates needless retrials renders the administration of justice more prompt and less expensive. The rule which we have distilled from our previous decisions does not reward with a new trial a party who sits mute when he should have spoken.

None of our previous decisions hold expressly that counsel must speak up when an irregular or informally expressed verdict is returned, but, since this court has often held that an attorney in a jury trial who becomes apprised of an irregularity must make timely objection or lose his right to complain, we know of no reason for permitting him to sit inert when he observes an irregularity or an informality in the verdict. He is an officer of the court and owes a duty to prevent the commission of error. As we have seen, the decisions of other courts which passed upon verdicts similar to the one which was returned upon the first cause

of action demanded that counsel make his objection before the discharge of the jury, under threat that he otherwise be satisfied with the ambiguous or informally expressed verdict.

We are satisfied that when counsel has adequate opportunity, before the discharge of the jury, to familiarize himself with the verdict, but makes no objection to the filing of the verdict or moves that the cause be remanded to the jury, he cannot later, by a motion for a new trial, assail the verdict upon the ground that it is irregular, ambiguous or informal. His failure to have employed the procedure warranted by § 5-319, supra, constitutes a waiver upon his part of all objections which could have been made on account of irregularity, informality or ambiguity in the verdict. After the discharge of the jury, there remains nothing to be done except to construe the verdict. To the extent that *Klein v. Miller,* supra, is out of harmony with the conclusions just expressed, it is overruled.

We come now to a construction of the verdict which was returned in the instant action. In construing it, we deem it well to return to *Snyder v. Portland Railway, Light & Power Co.* So far as can be gleaned from the record, no objections were made to the reception of the verdict in that case and, therefore, this court confined itself to the task of ascertaining the jury's meaning. It held that the verdict, which was for the plaintiff in the sum of $1.00 only, "was virtually a verdict for the defendant. By it the plaintiff was given $1.00 more than he was entitled to." The reasons set forth in the opinion for the interpretation were so cogent and well fortified by authority they have persuaded other courts.

In *Reynolds v. Kanzler,* supra, the verdict upon the second cause of action was virtually a counterpart of the verdict returned in the case at bar upon the first cause of action. The pertinent part read: "damages in the sum of $ None". This court did not hesitate to construe those words as a finding for the defendant.

From the foregoing we see that both *Snyder v. Portland Railway, Light & Power Co.,* supra, and *Reynolds v. Kanzler,* supra, construed verdicts such as the one returned upon the first cause of action in the case at bar as virtually for the defendant.

We said that the holding in *Snyder v. Portland Railway, Light & Power Co.,* supra, has been accepted as sound by other courts. We shall now take notice of three of the decisions which were influenced by the Snyder opinion.

*Fairmount Glass Works v. Cub Fork Coal Co.,* 287 US 474, 77 L ed 439, 53 S Ct 252, held that it was not error for a trial court to deny a new trial when the jury returned a nominal verdict. Mr. Justice Brandeis, reasoning for the court, said:

"* * * The plaintiffs were not entitled to a directed verdict. The evidence was voluminous; and, on some issues at least, conflicting. The instructions left the contested issues of liability to the jury. The verdict may have represented a finding for the defendant on those issues; the reason for the award of nominal damages may have been that the jury wished the costs to be taxed against the defendant. The defendant did not complain of the verdict."

The language is remarkably reminiscent of the phraseology in which the Snyder decision is cast. After the word "issues" where it appears the third time in the above excerpt there is a numeral calling attention to

a footnote which cites, among other decisions, *Snyder v. Portland Railway, Light & Power Co.*

*Snyder v. Portland Railway, Light & Power Co.,* supra, turned the scales in *Taylor v. Virginia Metal Products Corp.,* 111 Fed Supp 321. In that case, the plaintiff sought judgment against the defendant for the sum of $100,000 upon charges of libel. The answer denied the charges and submitted a counterclaim aggregating $97,030.95. The jury returned a verdict for the defendant upon the plaintiff's claim against it and, likewise, for the defendant in the sum of $1.00 upon the counterclaim. The decision construed the $1.00 verdict in the same manner as did *Snyder v. Portland Railway, Light & Power Co.,* the verdict which was before us in that case. In so doing, the federal court quoted extensively from the Snyder opinion and from those of two other courts which had been influenced by the Snyder opinion.

In *Haney v. Cheatham,* 8 Wash 2d 310, 111 P2d 1003, the court cited *Snyder v. Portland Railway, Light & Power Co.* as sole authority for the following principle which the court embraced:

> "Appellant is in no position to complain that he was prejudiced by the court's refusal to accept the second verdict for one dollar in favor of appellant as that verdict is in fact for the respondents. A verdict for one dollar in favor of the plaintiff in a personal injury action, when the jury knows that the plaintiff sustained damages in excess of that sum, is a verdict for the defendant; and is merely an artifice to release the plaintiff from the burden of costs of the action."

*Snyder v. Portland Railway, Light & Power Co.* has been cited many times by this court. *Hall v. Cor-*

*nett,* supra, quoted extensively from it. We are satisfied that it was correctly decided.

 Every party to a jury trial has a right to a verdict which is not only just but which is free from irregularities and ambiguities. But in trial by jury many rights slip through the fingers of those who do not object when something less than perfect is tendered. The right to a verdict couched in proper form and free from ambiguity is one which may be lost through failure to protest when a verdict is presented that fails to conform to standard. Without resort to further analysis, we express the conviction that the verdict upon the first cause of action must be deemed one for the defendant, and that the plaintiff, by remaining silent when it was received, waived his right to present the contentions upon which the motion for a new trial is predicated. The circuit court erred when it sustained the part of the plaintiff's motion which granted a new trial upon the first cause of action.

We come now to the verdict upon the second cause of action. A copy of it appears in a previous paragraph. We have mentioned the fact that when the verdict was returned, counsel for both parties were present and that neither objected to the filing of the verdict. Likewise, neither moved that the jury be sent back to correct or clarify the verdict. It is the plaintiff, not the defendant, who manifests dissatisfaction with the verdict.

A preceding paragraph quotes the motion for a new trial which makes the plaintiff's sole attack upon the verdict. The opening paragraph of the motion submits the following charge: "misconduct of the jury in failing to award plaintiff substantial general damages."

The purported misconduct is not divulged by an affidavit filed by the plaintiff. In fact, the motion is accompanied by no affidavit. The assumed misconduct consisted of nothing except the fact that the jury did not award to the plaintiff "substantial general damages." The plaintiff does not contend that the jury defied the court's instructions, and likewise does not contend that the verdict is out of harmony with an interpretation of the evidence which the jury could reasonably have taken. Let us pause for a moment upon the plaintiff's charge—"failing to award the plaintiff substantial general damages." The plaintiff makes no complaint about the award of special damages. He swore that he paid a physician who attended to his fractured rib $35, that he lost a month's wages and that his rate of pay was $75 per week "take home pay." The jury awarded him $1.00 compensatory damages, and because it gave him no more than that he resorts to the charge of "misconduct".

Section 5-802, OCLA (ORS 17.610) says:

"A former judgment may be set aside and a new trial granted on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
\* \* \*
"Misconduct of the jury; \* \* \*."

■ It is plain that the jury wanted the plaintiff to have no more than $37. It considered every demand which he made and, taking pen in hand, wrote its answers upon the form of the verdict which plaintiff's counsel had prepared. After the heading Compensatory Damages it wrote $1.00. That was its answer to his plea for compensatory damages. After the heading Punitive Damages it wrote $1.00, and after the heading

Special Damages it wrote $35. It is impossible to misunderstand the answers which the jury gave to the plaintiff's demand for damages. We are satisfied that when the verdict was read the plaintiff and his counsel fully understood that the jury wanted him to recover $37, and no more.

By reverting to the motion for a new trial, which is copied in a preceding paragraph, it will be seen that the motion, in addition to terming the jury's award to the plaintiff of only $1.00 compensatory damages as "misconduct", also refers to the jury's action in making that modest award as "arbitrary, and capricious, against the uncontradicted evidence and contrary to the instructions of the Court." Continuing, the motion for a new trial claims that the award of only $1.00 compensatory damages following the award of $35 "for medical expenses" was "inconsistent, and the result of prejudice and caprice, and as contrary to the uncontradicted evidence and instructions of the Court." We have now stated all of the grounds upon which the motion for a new trial was based. There are no others. In proceeding, we will have all of the charges in mind. All of them are based upon the same action of the jury; that is, its award to the plaintiff of only $1.00 compensatory damages.

When the verdict was returned with its award of only $1.00 general damages, the plaintiff and his counsel were accorded ample opportunity to examine the verdict. After acquainting themselves with the verdict and answering "no" to the trial judge's inquiry as to whether they wished the jury polled, they did not object to the filing of the verdict or move that the cause be recommitted to the jury. In short, they remained silent. It is clear that later, when they moved for a new trial, they had no more information about

the verdict and its terms than when they silently saw the verdict received and the jury discharged. In *Mitchell v. Bruening,* 139 Or 244, 9 P2d 811, this court affirmed an order of the trial judge which overruled a motion for a new trial which was based upon alleged misconduct of the jury. The decision said:

"* * * The attorney for defendant, knowing of the alleged misconduct, ought to have taken the proper steps immediately upon learning of the delinquency of the jurors named in his affidavit."

Other courts take the same view. We quote the following from 66 CJS, New Trial, § 62, p 189:

"The misconduct of jurors or of other persons affecting jurors ordinarily is waived as ground for setting aside the verdict and granting a new trial unless the unsuccessful party or his counsel, who had knowledge of the misconduct before the verdict, called the attention of the court thereto and asked for proper relief * * *."

As we have seen, plaintiff and his counsel had complete knowledge of the so-called "misconduct" before the jury was discharged, but maintained their silence.

The claim of misconduct, as the plaintiff's brief indicates, is based upon an inference drawn by him that the jury either misunderstood the instructions given them by the trial judge or misapplied them. We deem it manifest that neither of those alternatives, if it occurred, constituted misconduct under our statute authorizing trial judges to grant new trials (§ 5-802, OCLA). At any rate, the plaintiff made no objection when the verdict was returned.

The above suffices to dispose of the charge of purported misconduct. We will now consider the other charges. We have quoted the motion and have sum-

marized its charges. We think it is fair to say that the plaintiff relies upon a contention that when the jury awarded him $35 as special damages it was bound to give him a substantial amount for purported pain and suffering. He cites *Hall v. Cornett,* supra, and *Snyder v. Amermann, Jr.,* supra.

It is clear that the verdict upon the second cause of action is not void. In proceeding we shall constantly bear in mind the fact that this case is not concerned with a void verdict.

In disposing of the contentions which challenge the verdict which was returned upon the first cause of action, we stated the principles of law which govern irregularities and informalities. Those principles are equally applicable to the verdict which was returned upon the second cause of action, and therefore, we will not repeat them.

We see from what we have said that the verdict upon the second cause of action was similar to the first verdict which was returned in *Hall v. Cornett,* supra. When the verdict in this case was returned, the situation pertaining to the second cause of action was a counterpart to that which occurred when the jury in *Hall v. Cornett* filed into court with its first verdict. The plaintiff in this case, upon observing that the jury awarded him $35 special damages and only $1.00 compensatory damages, could have availed himself of the procedure which was employed in the Circuit Court for Douglas County when *Hall v. Cornett* was pending in that court; that is, he could have objected to the receipt of the verdict and could have moved that the cause be remanded to the jury with additional instructions. *Grotton v. Glidden,* 84 Me 589, 24 A 1008, is an illustration from another state

of the procedure which was employed in *Hall v. Cornett,* supra. That decision was based upon a verdict returned in an assault and battery case after the jury had returned an irregular verdict and the trial judge had recommitted the cause to the jury. The judgment upon the corrected verdict was affirmed. In *Lawson v. Sitgraves,* 299 Ky 545, 186 SW2d 182, the trial judge, upon observing that the verdict was for no more than the amount of the medical expenses, recommitted the cause to the jury with appropriate instructions. Thereupon a proper verdict was returned. The judgment entered upon it was affirmed.

But the plaintiff did not take the course which was employed in *Hall v. Cornett,* supra, *Grotton v. Glidden,* supra, and *Lawson v. Sitgraves,* supra. Likewise, although his motion for a new trial charges the jury with misconduct, he did not take the course which is exacted by *Mitchell v. Bruening,* supra. To the contrary, he kept his lips tightly sealed and permitted the trial judge to discharge the jury after he had ordered the filing of the verdict. Some days later, the plaintiff for the first time spoke up. Then he filed a motion for a new trial which charged the jury with misconduct.

Plainly, a litigant who wishes to present the contentions offered by this appeal must object promptly when he observes the irregularity or forfeit his right to object. Rights to object which have been waived cannot be reclaimed and revived by resort to a motion for a new trial. A litigant who meets with a verdict such as the one which was returned in this case or with verdicts such as those which were returned in *Snyder v. Portland Railway, Light & Power Co.,* supra, and *Hall v. Cornett,* supra, should not have a choice to employ the procedure offered by § 5-319, supra, or,

on the other hand, keep still and later move for a new trial.

■ We are satisfied that when the plaintiff, after acquainting himself with the verdict, made no objections to its receipt and no motion that the cause be recommitted to the jury, he waived the objections now under analysis. Having waived them, they were unavailable as the basis for a motion for a new trial. The motion should, therefore, have been denied. Error was committed when it was sustained.

■ Contrary to the mandate of Art. VII, § 3, Constitution of Oregon, the plaintiff asks us to re-examine the facts and find that the verdict cannot be justified. The jury is the fundamental fact-finder in our system of jurisprudence. *Van Lom v. Schneiderman,* 187 Or 89, 210 P2d 461, 11 ALR 2d 1195. We have no power to re-examine its award.

We conclude that the order granting a new trial was unwarranted and was entered in error. The order is reversed and vacated.

LATOURETTE, C.J., TOOZE and PERRY, JJ., concur.

WARNER, J., concurs in the result.

LUSK, J., dissenting.

I dissent from the decision of the court as to the verdict on the first cause of action on the authority of *Klein v. Miller,* 159 Or 27, 77 P2d 1103, 116 ALR 820 (1938); *McLean v. Sanders,* 139 Or 144, 7 P2d 981 (1932); and *Goyne v. Tracy,* 94 Or 216, 185 P 584 (1919). This decision overrules not merely Klein, but all three of the cited cases. It holds that the verdict upon the first cause of action "must be read as for the defendant". Klein and McLean hold that in an action for the recovery of money a verdict which finds

for the plaintiff and assesses damages at no dollars is neither a verdict in favor of the plaintiff nor a verdict in favor of the defendant, and is in effect no verdict at all. 159 Or 29; 139 Or 147. Both decisions cite and rely on Goyne, which holds that a court is without authority to enter a judgment on a verdict which finds for the plaintiff without more. The action was in a justice of the peace court for money had and received. The justice entered judgment for the full amount demanded and costs. On writ of review the Circuit Court remanded the cause for further proceedings, and we affirmed. All three decisions are based ultimately on the statute, which is controlling and which, so far as material, reads as follows:

"When a verdict is found for the plaintiff in an action for recovery of money * * * the jury shall also assess the amount of recovery * * *." ORS 17.425.

As recently as 1952, indeed, we reaffirmed the principle of these cases in *Snyder v. Amermann*, 194 Or 675, 679, 243 P2d 1082, when we said:

" 'We * * * find for * * * Plaintiff', standing alone, simply means that the issues, other than damages, have been resolved in favor of plaintiff, but could not be considered as a verdict for general damages because it would not have legal efficacy, lacking in a damage finding."

In the Klein and McLean cases we said that a verdict such as that now under consideration will not support a valid judgment because of its uncertainty; that it was impossible to ascertain from the verdict whether the jury intended to find for the plaintiff or the defendant. McLean reversed a judgment for the defendant entered upon the verdict. That is to say, the Circuit Court was reversed for doing the very

thing which the majority of this court now say should have been done in this case. Klein affirmed an order awarding the plaintiff a new trial. Klein (the only one of these three decisions now expressly overruled) is said to have been "written oblivious of our own decisions". The record is not harmonious to that assertion. McLean was heard and decided in 1932 by a department of the court. Klein was heard and decided in banc in 1938, and in that case, in the brief of the appellant (defendant in the Circuit Court), an effort was made to distinguish McLean. The court was also asked to re-examine the question decided in McLean, and the dissenting opinion of Mr. Justice ROSSMAN in that case, which cites *Snyder v. Portland Ry., Light & Power Co.*, 107 Or 673, 215 P 887, was commended by counsel to the favorable consideration of the court. In the Klein case Mr. Justice ROSSMAN again dissented, and expressed with ability and learning precisely the same views which he now expounds for the majority in this case. The dissenting opinion cites *Reynolds v. Kanzler,* 126 Or 245, 269 P 230, and *Snyder v. Portland Ry., Light & Power Co.,* supra, as authority for overturning what had theretofore been determined. The dissenting opinion also calls attention to the fact that counsel were present when the verdict was returned in the Klein case, and that the jury was polled, and no objection was made to the verdict, and that thereby "plaintiff waived his right to a verdict couched in any other form." 159 Or 35.

I respectfully suggest, therefore, that Klein was decided by the court with its eyes open and after there had been pressed upon it, not only by counsel but by a member of the court, the very arguments and authorities now employed to sustain today's decision, and that the doctrine announced in Klein and in McLean and in

Goyne is the law of this state, deliberately arrived at, and represents a deliberate rejection of the views of the majority in this case. This court has by no means been alone in the position it has taken upon this question. On the contrary, it has been one of a large and excellent company. *Klein v. Miller* is published in 116 American Law Reports with an annotation commencing at p. 828, upon the following subject: "Verdict which finds for party upon his cause of action or counterclaim for money judgment, but which does not state amount of recovery, or is indefinite in this regard, or which affirmatively states that he is entitled to no amount." At p. 829 the editors of ALR state that a verdict such as is described in the subject of the annotation "is not one on which a valid judgment can be entered", and to that statement are cited decisions from twenty-nine jurisdictions in this country and from England, including *Klein v. Miller, Goyne v. Tracy* and *McLean v. Sanders*. The decisions cited support the statement of the editors. In these circumstances the court might well heed the admonition of Mr. Justice McBRIDE in *Wallace v. Portland Ry., L. & P. Co.,* 103 Or 68, 77, 204 P 147: "Courts should as a rule be reluctant to sweep away a precedent of long standing."

*Reynolds v. Kanzler,* supra, cited by the majority, is not at all in point. The question there was upon the construction of two verdicts, one of which found for plaintiffs on their first cause of action and assessed their damages at a certain sum, and the other of which found for the defendants on a counterclaim in a larger sum. The court held that, construed together, the verdicts meant that defendants were entitled to recover the difference between the two sums, and stated that the applicable rule was, "if, from the data contained

in the findings returned, the amount recoverable is determinable by a mere mathematical calculation, the findings are sufficient.''

There was also in that case a verdict on plaintiff's second cause of action which read:

"On plaintiffs' second cause of action we find that plaintiffs, Richard P. Landis and Mabelle E. Landis, are entitled to recover of and from the defendants, James A. Reynolds and Minerva D. Reynolds, damages in the sum of $ None."

The question of the construction and validity of this verdict was not mentioned either in the briefs of counsel or in the opinion of the court. It differs markedly from the verdict in dispute here because it does not purport to be a verdict for the plaintiffs and contains no finding in favor of the plaintiffs. A verdict that plaintiff is entitled to recover nothing is on its face a defendant's verdict. But in this case the jury, by their verdict, found in favor of the plaintiff and then allowed him no damages. It is that kind of verdict which our statute denounces and which this court has held too uncertain to be the basis of a judgment.

Much of the court's opinion is given over to an attempt to show that a party waives his right to complain of an irregular verdict by failing to object before the jury is discharged. Were this a case in which the court had denied the motion for a new trial and the plaintiff had appealed, a different question might be presented. But an appeal to this court, based on the denial of a motion for a new trial, is on a different footing from an appeal from an order granting such a motion. We have many times held that the trial court has discretion to set aside a judgment and order a new trial for prejudicial error notwithstanding the failure of counsel to call the matter seasonably to the attention

of the court and obtain a ruling. *Neal v. Haight,* 187 Or 13, 32, 206 P2d 1197; *Lyons v. Browning,* 170 Or 350, 354, 133 P2d 599; *Timmins v. Hale,* 122 Or 24, 32, 256 P. 770; *Spokane County v. Pacific Bridge Co.,* 106 Or 550, 553, 213 P 151; *Archambeau v. Edmunson,* 87 Or 476, 487, 171 P 186. Moreover, as some of the cases cited in the opinion of the majority show, the question of the construction of the verdict is primarily for the trial judge. *Simmons v. Fish,* 210 Mass 563, 97 NE 102, for example, recognizes the right of the trial judge to determine whether a verdict similar to the one under discussion is an improper compromise verdict and to set it aside for that reason. *Fairmount Glass Works v. Cub Fork Coal Co.,* 287 US 474, 77 L ed 439, 53 S Ct 252, is implicit with the thought that the trial judge had the power to hold that "the jury found for the plaintiff and failed to perform its task of assessing damages", and that the verdict would be subject to be set aside for that reason. Under the theory of these cases, which are relied on as authority by the majority, the trial judge would have been justified in setting aside the verdict under discussion and ordering a new trial for either of the foregoing reasons, and under established procedure this court would not disturb the ruling notwithstanding the failure of counsel to object to the verdict before the discharge of the jury. *Snyder v. Portland Ry., Light & Power Co.,* supra, is not in conflict with this view, for in that case the trial judge refused to grant a new trial and we affirmed the order.

Although the opinion of the majority is replete with general statements by textwriters and judges respecting the rule of waiver, it is significant that not a single decision has been cited which applies the rule to a verdict such as we are now considering. In

none of the more than fifty cases cited in the annotation in 116 ALR to which I have referred is the subject of waiver so much as mentioned. *Schumacher v. Moffitt,* 71 Or 79, 142 P 353, cited in the majority opinion, is not in point. That case was an action to recover a balance due for labor performed. The verdict was for the plaintiff "as prayed for in his complaint". The court entered a judgment for the amount prayed for, and on appeal this court said with respect to the verdict:

> "The verdict was irregular, but the intent of the jury can be deduced from it, and, in the absence of any objection at the time of its rendition, it was sufficient * * *."

That, however, was a verdict in which the jury did "assess the amount of recovery", as our statute requires, though in an unconventional manner, and there could be no doubt about what the jury intended. Entry of judgment thereon was not an unauthorized act, and so it was entirely proper to hold that the party had waived any objection to receiving the verdict by his silence. But *Wall v. Van Meter,* 311 Ky 198, 223 SW2d 734, 20 ALR2d 272, is a case in point. It was an action to recover damages for personal injuries in which a general verdict for the plaintiff for $98, the exact amount, the testimony showed, that he expended for medical treatment, was held to be bad as violating the instructions of the court. A judgment entered on the verdict was reversed. The appellee, defendant in the lower court, insisted, in the language of the opinion, that "it was incumbent upon appellant to move the court to have the jury correct the verdict and by failing to make such motion, what he calls 'the irregularity' in the verdict was waived", citing two Kentucky cases. One of these, the court held, was not in point because

the only thing wrong with the verdict was that the jury had failed to separate its findings of several items of damages, and instead brought in a verdict for a lump sum of money. The other case was said to support the appellant's contention rather than that of appellee, and the court, in rejecting the claim of waiver, said:

"* * * In the instant case we have no irregularity in the verdict but an ignoring of the fundamental law given the jury by the court in its instructions."

These instructions were that, should the jury find for the plaintiff, they should award him such a sum of damages as would fairly and reasonably compensate him for physical and mental suffering and for medical expenses incurred. They were held to have been ignored because the jury awarded the plaintiff only the amount of his medical bills.

It will be observed that the verdict in the Kentucky case was invalid for the same reason that the verdict on the second cause of action in this case was invalid. The decision, however, applies with equal force to the verdict on the first cause of action.

The court quotes liberally from 64 CJ, Trial, 1110 § 916, but overlooks the following statement in that section: "Failure to object to an *invalid* verdict will not preclude a party from subsequently attacking it" (italics added), citing *Davis v. Stone,* 172 Ky 696, 189 SW 937, and *E. B. Whitfield-Baker Co. v. Anderson,* 147 Ga 242, 93 SE 406, which support the text.

The court also quotes from Busch, Law and Tactics in Jury Trials § 599. In a footnote to that section the author calls attention to "defects not waived", citing *E. B. Whitfield-Baker Co. v. Anderson,* supra, and *Panhandle & S. F. Ry. Co. v. Clarendon Grain Co.,*

(Tex Civ App) 215 SW 866. The Texas case holds that objection to a joint verdict against defendants, whose liability was separate and distinct, was not waived by failure to object to the reception of the verdict since the "verdict and judgment thereon was not merely defective or informal but positively erroneous."

Since the verdict in question is not a mere informal or irregular statement of the jury's decision, but, as this court has repeatedly held, is invalid and contrary to our statute, a judgment entered upon it may be properly challenged for the first time by motion to set it aside and for a new trial. And it is a matter of no consequence, in my opinion, whether or not such a verdict is "void". The introduction of that word into the discussion adds nothing to the argument. We are not concerned here with a question of collateral attack.

I also dissent from the court's decision respecting the verdict on the second cause of action.

It is established law in this state that in an action based on negligence a verdict for plaintiff for substantial special damages and which allows no general damages is invalid and may be set aside on motion. *Snyder v. Amermann,* supra; *Hall v. Cornett,* 193 Or 634, 240 P2d 231. Counsel for defendant seek to distinguish these holdings because damage is the gravamen of an action for negligence, whereas, in an action for assault and battery, an intentional tort, a verdict for nominal damages may be allowed even though no actual damages are suffered. The distinction is pointed out and the authorities reviewed in *Hall v. Cornett,* supra, at pp. 643, 644. It might have application to this case if in fact the plaintiff had suffered no real injury or if there were a dispute in the evidence upon that issue. But that is not the state of the present case because it is shown without contradiction that the

plaintiff was severely beaten in the second altercation and that one of his ribs was broken, necessitating the services of a physician. If, as the jury necessarily found by its verdict for special damages, the defendant was guilty of assault and battery, then plaintiff was entitled to reasonable compensation for his injuries. *Dunbar v. Cowger,* 68 Ark 444, 59 SW 951; 25 CJS 469, Damages § 11. But a verdict for $1 is not reasonable or any compensation. It is a verdict for nominal damages, which is the same thing as no damages at all. *Hall v. Cornett,* supra, p. 644. The same rule, therefore, should be applied here as in that case. To hold that the Circuit Court had the power to set aside such a verdict involves no conflict with our decision in *Van Lom v. Schneidermann,* 187 Or 89, 210 P2d 461, 11 ALR2d 1195, since the court's action did not call for the re-examination of a question of facts tried by a jury, but only for the decision of a question of law. We so held in *Hall v. Cornett* (193 Or 647).

It was suggested on the reargument by counsel for the defendant that there were circumstances of provocation in evidence which would authorize the jury to mitigate the damages, and that in this view the verdict for $1 compensatory damages need not necessarily be deemed a verdict for nominal damages. The suggestion is without merit, for while provocative words and acts may be considered by the jury in mitigation of punitive damages, this is not true of compensatory damages. *Penn v. Henderson,* 174 Or 1, 20, 146 P2d 760; *Housman v. Peterson,* 76 Or 556, 559, 560, 149 P 538. And see Annotation, 63 ALR 890.

It is also contended that the rule of *Snyder v. Amermann* and *Hall v. Cornett* does not apply because the sum of $35 special damages is not a substantial sum. I do not agree. The amount allowed was exactly the

amount of special damages established by the evidence and submitted to the jury in the court's instructions.

The opinion of the majority dwells at length on one of the grounds of plaintiff's motion for a new trial, to wit, misconduct of the jury, and labors the point that this ground is waived by the failure of a party to make timely disclosure to the court of the misconduct and to apply for proper relief. I do not know what the rule would be where (as in this case) the alleged misconduct becomes known to the court and counsel at the same time. That, however, is a purely academic question, as is the entire discussion of this subject in view of the court's holding—in which I concur—that no such misconduct is involved.

In support of the motion four grounds are assigned. Number 4 reads in part that the verdict is "inconsistent * * * and is contrary to the uncontradicted evidence and instructions of the Court."

Our new trial statute, ORS 17.610, provides that a new trial may be granted for the following causes, among others:

"(6) Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

"(7) Error in law occurring at the trial, and excepted to by the party making the application."

The fourth ground of the motion is a sufficient statement that the verdict is "against law". For the defect in the verdict here is precisely the defect in the first verdict in *Hall v. Cornett,* as well as the verdict in *Snyder v. Amermann,* and we said in *Hall v. Cornett*:

"The award of nominal general damage and substantial damage involved an inconsistency. It indicated a compromise and they [the jury] violated

the instructions of the court. The first verdict was therefore, not *'such as the court may receive.'* '' 193 Or 645, 646.

The language which I have italicized is taken from ORS 17.360, the first sentence of which reads:

"When the verdict is given, and is such as the court may receive, and if the required number of jurors agree, and the jury is not again sent out, the clerk shall file the verdict."

The fourth ground of the motion for a new trial also indicates an error in law occurring at the trial, namely, the receipt by the court of an invalid verdict. The fact that no exception was taken by counsel for plaintiff is not important in view of the fact that the court allowed the motion, for, as I have already pointed out, the trial judge in this state has authority in the interest of justice to grant a new trial for error at law even though no exception was taken by the party making the application. See *Lyons v. Browning,* supra, 170 Or 354. Moreover, in several recent cases we have re-affirmed the rule that the trial judge is given wide latitude in the granting of new trials, and his decision will be upheld on appeal when any "tenable ground" in support of it appears in the record. *Hitchman v. Bush,* 195 Or 640, 642, 247 P2d 211; *Christianson v. Muller,* 193 Or 548, 551, 239 P2d 835; *Bartholomew v. Oregonian Pub. Co.,* 188 Or 407, 411, 216 P2d 257. We have also recently said that "It is well established by the decisions of this court that where error has been committed, a motion for a new trial is addressed to the sound discretion of the trial court *and will be reviewed only for a manifest abuse of discretion.*" (Italics added.) In *Hall v. Cornett* we held that the court was right in refusing to receive a verdict which was bad for the same reason that the verdict on the

second cause of action in this case was bad. In *Snyder v. Amermann* we went further. In that case the court not only received the verdict and entered a judgment on it for the plaintiff, but denied the plaintiff's motion for a new trial. The appeal was by the plaintiff from the judgment, and the ruling on the motion for a new trial was assigned as error. We said that if the verdict was one for special damages "it cannot stand because, under the well-recognized rule of law, before a verdict for special damages may be entered in a case of this kind, there must be a general verdict." (194 OR 678.) The record in that case failed to disclose any exception to any ruling of the court having to do with the validity of the verdict unless it be to the denial of the motion for a new trial. Nevertheless, we held that the ruling was error and reversed. In this case the majority hold that it was error for the court to *grant* a new trial because of the same kind of defect in the verdict, and this is done notwithstanding our repeated pronouncements that if "tenable ground" for such a decision appears in the record we will not disturb it, and that we will not review it except for abuse of discretion. If entering judgment on a verdict for substantial special damages and no general damages is a tenable ground for *reversing* an order *denying* a motion for a new trial in one case, I should like to know why it is not an equally tenable ground for *affirming* an order which *grants* such a motion in another case.

To my mind the most serious implication of the court's decision does not arise from the overruling of established precedents—which is sometimes desirable—but from the further inroads made by the court upon the already too greatly diminished powers of the trial judges of this state. See *Van Lom v. Schneidermann,* supra, 187 Or 113. When the Constitution unduly limits

judicial power we must accept it. But we should be careful about using our own prerogative in such a way as to impose unwarranted restraints on the authority of the courts where the cases are actually tried. Whatever room for differences of opinion there may be about the proper construction of the verdict on the first cause of action in this case, there can be none—and none is suggested—about the invalidity of the verdict on the second cause of action—that it is inconsistent, an improper compromise verdict, contrary to the instructions of the court, and such a verdict as should not have been received. Yet this court now says that, simply because counsel did not speak when he might have spoken, the judge who presided over the trial was without the power to set aside a judgment based upon such an illegal verdict. That, as I view it, is a mistaken and unfortunate exercise of power on our part.

I am authorized to say that Mr. Justice BRAND concurs in the foregoing opinion.